John GRIDLEY, Jr., Plaintiff,

v.

SAYRE & FISHER COMPANY, a New Jersey Corporation, and John W. Cunningham, Defendants.

John N. GRIDLEY, III, Plaintiff,

v.

SAYRE & FISHER COMPANY, a New Jersey Corporation, and John W. Cunningham, Defendants.

Nos. CIV72–4097, CIV73–4046.

United States District Court,
D. South Dakota, S. D.

March 24, 1976.

Gary J. Pashby and Vance Goldhammer of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, S. D., for plaintiffs.

Laird Rasmussen and Timothy J. McGreevy of Dana, Golden, Moore & Rasmussen, Sioux Falls, S. D., for defendants.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

The above entitled cases were consolidated for trial. The plaintiffs (hereinafter "the Gridleys", John, Jr., and John, III) are father and son. In April of 1972, the Gridley's purchased securities from the defendant Sayre & Fisher Company (hereinafter Sayre & Fisher). One provision in the purchase agreement was that John, Jr.'s stock would be registered with the Securities and Exchange Commission within five days of purchase. When this did not take place, John, Jr. commenced an action on November 8, 1972, for breach of contract. The complaint was later amended twice. Default judgment was entered against Sayre & Fisher on January 25, 1974.

The remaining two causes of action against defendant Cunningham, who was added as a defendant when the original complaint was first amended, were tried to the Court. John, III, joined Cunningham as a defendant in his original complaint which was filed at the same time John, Jr., filed his first amended complaint. One cause of action is based on common law fraud and deceit, the other is founded on violations of sections 12(1) and 12(2) of the Securities Act of 1933 (15 U.S.C. Secs. 77l(1) and 77l(2)).[1]

---

1. 15 U.S.C. Sec. 77l(1) and (2) provide:
 Any person who—
 (1) offers or sells a security in violation of section 77e (Prohibiting the sale of a security unless a registration statement is in effect) of this title, or
 (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known; of such untruth or omission,
 shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such

Reviewing the facts of this case chronologically, it appears that the Gridleys were in California at the La Costa Resort and Country Club in early April, 1972. While there, John, Jr., purchased a condominium from one David Levine. During conversations with Mr. Levine the Gridleys learned of a potential investment involving the defendant Cunningham, American General Finance Corporation (hereinafter American General), of which Cunningham was executive vice-president, and Sayre & Fisher. The Gridleys were advised that American General, a closed corporation engaged in the land development business, was contemplating a merger with Sayre & Fisher, a New Jersey corporation which had recently converted from brick manufacturing to land development. The anticipated result of the merger would be a significant increase in the value of Sayre & Fisher common stock.

The Gridleys ascertained that some stock and convertible debentures of Sayre & Fisher were available. After a brief investigation of American General, plaintiffs returned to Sioux Falls. The Gridleys never spoke with Cunningham while in California although they did obtain his name and address from Levine. Despite some confusion on the matter, it appears that the first contact between the parties occurred when John, Jr., called Cunningham from Sioux Falls on or about April 13, 1972. Cunningham had just returned from New York, where he and two others had spent approximately five days investigating Sayre & Fisher. In fact the testimony and exhibits revealed that American General assumed control of Sayre & Fisher on April 12, 1972. Two or three telephone conversations followed this initial contact resulting in plaintiffs expressing a strong interest in Sayre & Fisher securities. John, Jr., desired 25,000 shares of stock at two dollars per share. John, III, was contemplating a $75,000 face value convertible debenture

with an 8 percent annual interest rate offered for $50,000.

In the course of a conversation between the parties on the morning of April 19, 1972, the plaintiffs requested Cunningham to forward the necessary papers to them in Sioux Falls. Cunningham responded that since he would have to fly to St. Louis to pick up the papers at the main office, he would drop them off personally on the way back. The Gridleys were instructed to forward $100,000 to a trust account in San Diego. That afternoon, per instructions, the money was forwarded to San Diego. Approximately at seven o'clock that evening Mr. Cunningham arrived in Sioux Falls from St. Louis carrying the necessary forms. After eating dinner the Gridleys gave Cunningham a brief tour of Sioux Falls indicating the various properties they owned. They then retired to the defendant's motel room to complete the transaction.

What transpired at the motel room is at the very heart of this lawsuit. Two conflicting stories emerge. Plaintiffs allege that Cunningham made the following untrue statements of material facts: (1) that there would be several persons other than the plaintiffs who would be purchasing similar securities; (2) that although Sayre & Fisher was experiencing a temporary shortage of working capital, the problem would be eliminated shortly inasmuch as Sayre & Fisher would merge with American General; (3) that Sayre & Fisher only needed $200,000 in additional working capital until this acquisition took place; (4) that a stockholders' meeting of Sayre & Fisher would be held shortly to approve the acquisition; (5) that there would be no problem in obtaining approval for this acquisition because defendant Cunningham and other principals of American General were also in control of Sayre & Fisher; and (6) that Sayre & Fisher was experiencing no significant problems with its creditors.

security with interest thereon, less the amount of any income received thereon, upon the

tender of such security, or for damages if he no longer owns the security.

Additionally plaintiffs contend that Cunningham omitted several material facts: (1) that Cunningham's knowledge of the financial status of Sayre & Fisher was based on a "cursory" examination of the books without the assistance of accountants; (2) that the trading of Sayre & Fisher stock had been halted by the American Stock Exchange at least once prior to April 19, 1972; (3) that Sayre & Fisher had a tax liability of approximately $900,000 which would affect its continued operations; (4) that the American Stock Exchange would not let Sayre & Fisher list any more stock until the 1971 audit was completed; (5) that prior to April 19, 1972, Sayre & Fisher had entered into a sham transaction involving the purchase of a company called AIMS International; and (6) that the actual management of Sayre & Fisher was vested in an individual whom Cunningham knew or should have known should not have been so entrusted.

Briefly, Cunningham argues that he informed the Gridleys of all that he knew at the time and denies omitting any facts of which he was cognizant. Further, Cunningham emphasizes that John Gridley, III, a practicing attorney in Sioux Falls, personally examined the documents page by page in the motel room and even explained certain provisions to Cunningham.

Later that evening the Gridleys signed the necessary instruments and Cunningham returned to California the following day. The first indication of any irregularity arose when Sayre & Fisher failed to register John, Jr.'s, stock with the SEC. John, Jr., commenced an action solely against Sayre & Fisher on November 8, 1972, for breach of the purchase agreement. John, III, was not paid his first installment of interest, due April 19, 1973, on his investment. Very shortly thereafter, he commenced an action against Sayre & Fisher and Cunningham. This complaint, filed on June 4, 1973, alleged Cunningham to be liable for common law fraud. On the same date John, Jr., amended his complaint against Sayre & Fisher to include the above tort claim against Cunningham. Finally, on April 30, 1974, plaintiffs filed amended complaints alleging violations of Sections 12(1) and 12(2) of the Securities Act of 1933.

## STATUTE OF LIMITATIONS

█ Turning to the claimed violations of securities law, defendant Cunningham first contends these claims are absolutely barred by the statute of limitations. The limitation periods are set out in Section 13 (15 U.S.C. Sec. 77m) of the Act as follows:

> No action shall be maintained to enforce any liability created under section (11) or (12(2)) unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence, or if the action is to enforce a liability created under section (12(1)) of this title, unless brought within one year after the violation upon which it is based. * * *

It is clear that claims under Section 12(1) have a different limitation period than claims under Section 12(2). Under the former an action must be commenced within one year *after the violation*, whereas under the latter the action must be commenced within one year *after discovery* of the untruth or omission or one year after the discovery should have been made in the exercise of reasonable diligence. Defendant argues that since the first reference to security law violations appeared in the April, 1974, amendments, a little more than two years after the transaction, the provisions of Section 13 bar these claims.

█ In discussing this defense it must be kept in mind that both plaintiffs assert two separate violations of the 1933 Act. Moreover, as set out above, each claim carries a separate limitation period. As concerns John, III, it is undisputed that his first complaint was not filed until June of 1973, more than one year after the violation upon which it is based. Thus, his Section 12(1) claim is

barred by the statute of limitations. However, the Court feels that pursuant to Rule 15(c) of the F.R.Civ.P., the Section 12(2) claim of John, III, as will be further explained in context with the claim of John, Jr., is not barred. The thorny issue is whether John, Jr., has a valid Section 12(1) claim. There is no question that he failed to file a complaint against Cunningham alleging security law security law violations within one year of the transaction. Nonetheless, he did file a complaint on November 8, 1972, against Sayre & Fisher which was later amended to include Cunningham. Rule 15(c) of the F.R.Civ.P. as amended in 1966 provides:

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The fact that John, Jr.'s amended complaint added a different legal theory clearly does not prevent the amended complaint from relating back. *See* 1A Barron and Holtzoff, Federal Practice and Procedure 704 (Wright Ed. 1960); 6 Wright and Miller, Federal Practice and Procedure Sec. 1497, at 500 (1970). It is beyond cavil that all of the various claims arose out of a single purchase and sale which occurred on April 19, 1972. Likewise there can be no doubt that Cunningham knew or should have known that except for inadvertence the action would have been against him. In fact,

annexed to the original complaint filed by John, Jr., is a copy of the Stock Purchase Agreement signed by John Cunningham as executive vice-president of Sayre & Fisher. The Section 12(1) claim of John, Jr., is not barred by Section 13. *See generally Tauss v. Rizzo*, 361 F.Supp. 1196 (E.D.Pa.1973).

■ Returning to the Section 12(2) claims of both plaintiffs, the question is whether an action was commenced within one year of the time when they should have discovered by the exercise of reasonable diligence the untrue statements or omissions. Defendant asserts that the critical time is April 19, 1974, the date when plaintiffs first specifically alleged violations of the 1933 Act. However, that contention completely ignores Rule 15(c). As of May, 1973, both plaintiffs had filed complaints against defendant, Cunningham, albeit on a different theory of recovery. Even if the Court accepted as true the defendant's statement that the Gridleys should have known of any untrue statements or omissions sometime near the end of 1972 or early 1973, Rule 15(c) mandates finding for the plaintiffs on this issue. If the statute began to run in late 1972, it is clear that the plaintiffs would have until late 1973 to file a complaint. Therefore, the Court holds that the Section 12(2) claims of both Gridleys are not barred by the statute of limitations.

### FAILURE TO AFFIRMATIVELY PLEAD

■ Next, Cunningham asserts that should the Court rule that the statute of limitations has not barred the claims under Section 12(2), plaintiffs' failure to affirmatively plead compliance with Section 13 requires dismissal. In ruling on this defense the Court is well aware of directives to construe federal security laws liberally and flexibly according to their remedial purposes. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *Mar-*

*shall v. Lamson Bros. & Co.*, 368 F.Supp. 486 (S.D.Iowa 1974).

In the first instance, plaintiffs have been hampered throughout this protracted litigation by extremely dilatory tactics on behalf of the defendant. It was only when the Court[2] ordered defendant to give his deposition that plaintiffs were able to obtain any appreciable amount of information. Secondly, the plaintiffs did amend their complaints at trial to include a clause stating "the fact that said statements were untrue having been discovered by plaintiffs no earlier than May of 1973." This complies with the requirement that in an action governed by Section 13 a plaintiff must allege facts showing when the limitation period began to run. See *Bisgeier v. Fotomat Corporation*, 62 F.R.D. 113 (N.D.Ill.1972).

### QUALIFICATION AS A TRANSACTION NOT INVOLVING ANY PUBLIC OFFER

■ Section 4 of the 1933 Act (15 U.S.C. Sec. 77d) provides for certain exempted transactions which do not require a registration statement. Included are "transactions by an issuer not involving any public offering." Section 4(2), 15 U.S.C. Sec. 77d(2). If the instant transaction did not involve a public offering, Cunningham would not be liable to John, Jr., under his Section 12(1) claim. Any discussion of what constitutes a "public offering" necessarily begins with *S.E.C. v. Ralston Purina Co.*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953). In *Ralston* the Supreme Court set out guideposts for determining the scope of the private offering exemption. The Court stated that the applicability of this exemption "should turn on whether the particular class of persons affected needs the protection of the Act". 346 U.S. 125, 73 S.Ct. 984, 97 L.Ed. 1498–99. The Court also felt it appropriate to place the burden of proof on the one who chooses to plead the exemption, and concluded by stating:

. . . The focus of inquiry should be on the need of the offerees for the protections afforded by registration. The employees here *were not shown to have access to the kind of information which registration would disclose.* . . . (emphasis added) 346 U.S. 127, 73 S.Ct. 985, 97 L.Ed. 1499–1500. A review of the record indicates a total failure of defendant to prove that John, Jr., was not in need of protection. The mere fact that he had made investments in the past surely does not sustain defendant's burden of proof. The unsophisticated and unwary are not the only beneficiaries of the federal securities laws. *See*, e. g., *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680 (5th Cir. 1971); *S.E.C. v. Texas Gulf Sulfur Co.*, 401 F.2d 833 (2nd Cir. 1968) (en banc), *cert. denied sub nom. Kline v. S.E.C.*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Furthermore, defendant failed to sustain his burden of proving that John, Jr., had access to the kind of information which registration would provide. In fact no evidence was submitted by defendant on this issue.

### MERITS OF THE SECTION 12 CLAIMS

■■ We now turn to the substantive allegations of both plaintiffs. The Section 12(1) claim of John, Jr., has clearly been proven. At the time of the sale on April 19, 1974, no registration statement was in effect; in fact to date no registration statement has ever been filed. Liability for the sale of unregistered securities is very nearly strict liability. No showing of scienter is required; mere proof of the sale of unregistered securities is sufficient. *Ingenito v. Bermac*, 376 F.Supp. 1154 (S.D.N.Y.1974).

■ The Section 12(2) claims of both plaintiffs require proof of (1) an offer or sale of a security, (2) by the use of any means of interstate commerce, (3) through a prospectus or oral communication and, (4) which includes an untrue

2. Hon. Paul Benson sitting while I was in St. Paul presiding over the Wounded Knee trial.

statement of material fact or omits to state a material fact. Defendant bears the burden of proving that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission.

No dispute exists as to whether a sale of a security transpired. The telephone calls, interstate travel and use of the mails establish the use of interstate commerce. *See Hill York Corp. v. American Intern. Franchises, Inc.*, 448 F.2d 680 (5th Cir. 1971). Oral communications clearly occurred between the parties.

 The final element, whether material misstatements or omissions were involved, requires some preliminary comment. To be a "material" fact, it must concern information about which an average prudent investor ought reasonably be informed of before purchasing the security. *Hopkins University v. Hutton*, 422 F.2d 1124 (4th Cir. 1970); *S.E.C. v. Texas Gulf Sulfur Co.*, 401 F.2d 833 (2nd Cir. 1968) (en banc), *cert. denied sub nom. Kline v. S.E.C.*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). No showing of scienter is required; negligent misstatements are actionable under Section 12(2). *See Vanderboom v. Sexton*, 422 F.2d 1233 (8th Cir. 1970); *Phillips v. Alabama Credit Corp.*, 403 F.2d 693 (5th Cir. 1968). Finally, it should be noted that recovery under this section does not require proof of reliance, a necessary element of a claim of fraud or deceit. *Gilbert v. Nixon*, 429 F.2d 348 (10th Cir. 1970).

 Reviewing all the testimony and exhibits, the Court finds that the defendant was negligent in misstating or omitting several material facts, including:

1) that several persons other than the Gridleys would be purchasing similar securities,

2) that a stockholders' meeting of Sayre & Fisher would be held shortly to approve the acquisition,

3) that there would be no problem obtaining approval for this acquisition because defendant, Cunningham,

and other principals of American General were also in control of Sayre & Fisher,

4) that Sayre and Fisher was experiencing no significant problems with its creditors,

5) that Cunningham's knowledge of the financial status of Sayre & Fisher was without the assistance of accountants, and

6) that Sayre & Fisher had a tax liability rather than tax losses which could be carried forward.

## COMMON LAW CLAIM OF FRAUD

 In South Dakota the essential elements of a claim for fraud or deceit are that a representation was made as a statement of fact which was untrue and known to be untrue by the party making it, or else recklessly made; and that the statement was made with intent to deceive and for the purpose of inducing action by the other party who did, in fact, rely on the representation and was thereby induced to act to his detriment. *Northwest Realty Company v. Colling*, 82 S.D. 421, 147 N.W.2d 675 (1967). The Court is not convinced by a preponderance of the evidence that Cunningham made statements he knew were untrue. Certainly many of the statements were the product of negligence or puffing, but not recklessness. The evidence also revealed that American General, of which Cunningham was vice-president and owned 25% of the stock, was making investments at this time in Sayre & Fisher. This fact belies the plaintiffs' argument that Cunningham intended to deceive them. Furthermore, John, Jr., testified that on the morning of April 19, 1972, he told defendant over the phone, approximately fifteen hours before Cunningham conversed with them in the motel room, of his decision to purchase the 25,000 shares and his son's decision to buy the debenture. (Trans. 283). No doubt exists that the Gridleys sent the money before Cunningham even arrived in Sioux Falls. These facts do not square with any claim of reliance by the

plaintiffs. The Court finds for defendant on plaintiffs' claim of fraud or deceit.

### PUNITIVE DAMAGES

█ Plaintiffs have requested punitive damages. The Court finds that no showing of malice or bad faith has been established. Therefore it is unnecessary to reach the question of whether this is an action "arising from contract." *See* SDCL (1967) 21–3–2.

In summary, the Court finds John W. Cunningham liable in the amount of $50,000 to John Gridley, Jr., for violation of Section 12(1) and 12(2), and to John N. Gridley, III, in the amount of $50,000 for violation of Section 12(2). The Court finds for defendant and against plaintiffs on the common law claim of fraud. The stock and debenture sales are rescinded and plaintiffs are directed to prepare the appropriate order. The foregoing constitute the findings of fact and conclusions of law of the Court.