**BROWNING DEBENTURE HOLDERS' COMMITTEE, on behalf of itself, of its Members and of all other Holders of 6% Convertible Subordinated Debentures Due July 1, 1987 of DASA Corporation, etc., Simms C. Browning, etc., and Roy E. Brewer, etc., Plaintiffs-Appellants,**

v.

**DASA CORPORATION et al., Arthur Andersen & Co., etc., and the Bank of New York, Trustee under the Indenture dated as of July 1, 1967 between the Bank of New York and DASA Corporation, etc., Defendants-Appellees.**

Nos. 1037–1039, Dockets 77–7013, 77–7014, 77–7074.

United States Court of Appeals, Second Circuit.

Argued March 31, 1977.

Decided Aug. 11, 1977.

Jerold Oshinsky, New York City (R. Mark Keenan, Anderson, Russell, Kill & Olick, P. C., New York City, of counsel), for plaintiff-appellant Simms C. Browning.

Bradley R. Brewer, New York City (Brewer & Soeiro, New York City, of counsel), for appellants Roy E. Brewer and Bradley R. Brewer.

I. Michael Bayda, New York City (Jacobs, Persinger & Parker, New York City, of counsel), for defendants-appellees DASA Corp., Ernest T. Greeff, Robert LeBuhn, Edgar B. Stern, Jr., Ronald W. Bolivar and Richard A. Reichter.

James D. Zirin, New York City (Edward J. Ross, Robert G. Kuhbach, Breed, Abbott & Morgan, New York City, Charles W. Boand, Wilson & McIlvaine, Chicago, Ill., of counsel), for defendant-appellee Arthur Andersen & Co.

David M. Olasoy, New York City (Edward W. Keane, Sullivan & Cromwell, New York City, of counsel), for defendant-appellee The Bank of New York.

Before LUMBARD, MANSFIELD and GURFEIN, Circuit Judges.

MANSFIELD, Circuit Judge:

This suit by certain holders of 6% convertible subordinated debentures [1] issued by DASA Corporation (DASA) and due in 1987 is based on alleged false and misleading statements and breaches of fiduciary duty in connection with proxy statements used by DASA for its 1972 annual meeting and a solicitation letter dated March 9, 1972, sent by DASA to the debenture holders requesting permission to sell certain DASA assets pursuant to the indenture under which the debentures were issued. Plaintiffs, a committee consisting of three debenture holders

---

1. Although DASA had several classes of convertible debentures outstanding at the time of the events complained of, all references in this opinion to debentures and bondholders means only the class of 6% convertible subordinated debentures due 1987 and the holders thereof.

plus two members suing individually and as class representatives, brought suit against DASA, its accountant, Arthur Andersen & Co. (Andersen), and the indenture trustee, Bank of New York (Bank), alleging numerous violations of the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, and the proxy rules. The United States District Court for the Southern District of New York, Thomas P. Griesa, *Judge,* dismissed two of plaintiffs' five claims in 1973, and we affirmed. 524 F.2d 811 (2d Cir. 1975). Prior to trial, the district court, Richard Owen, *Judge,* denied class certification, dismissed two more of the claims, and denied leave to add another. After a non-jury trial the court found for DASA (the only remaining defendant) and that the suit had been brought and conducted in bad faith. Attorneys' fees were awarded to DASA, Andersen and the Bank. Plaintiffs here appeal the various dispositions against them on the merits, the award of attorneys' fees, and other rulings of the district court during the course of the proceedings. We affirm on the merits, but reverse the award of attorneys' fees and remand for reconsideration of part of that award.

In 1967 a company known as Cyber-Tronics, Inc. (CTI), which was engaged in the business of leasing and servicing data processing equipment, issued some $6,000,000 worth of 6% convertible subordinated debentures due 1987. Appellants purchased a total of about 2% of the issue. Two years later, CTI was merged into DASA, a company engaged in manufacturing and distributing telephone dialers under the tradename "Magicall." The successor company, DASA, assumed all of CTI's debt obligations, including the 1987 debentures. On December 30, 1971, DASA entered into an agreement, contingent on the consent of two-thirds of the convertible debenture holders, for the sale of computer assets that had formed part of CTI's business.

On or about January 24, 1972, DASA sent its shareholders, including appellant Roy Brewer, notice of its annual meeting of shareholders to be held February 29, 1972. The business of the meeting was stated to be the fixing of the number of DASA directors at seven, the election of the seven directors, and the ratification of the selection of Andersen as accountant for the fiscal year ending October 31, 1972. Attached to the notice was a proxy statement, which set forth the management slate of nominees for director and supported ratification of the selection of Andersen as accountant. Also sent out in connection with the meeting was DASA's 1971 financial statement.

In early February 1972 appellants, unhappy with the direction their investments in the company were taking, denominated themselves the "Browning Debenture Holders Committee" and through negotiation convinced DASA to offer a reduction in the conversion price of the debentures from $42.42 to $21.00 in order to induce the debenture holders to agree to the computer sale. Not satisfied with this reduction, on February 26, three days before the annual meeting, Roy Brewer proffered his own proxy statement to DASA's management for transmittal to its shareholders in connection with the meeting. The statement favored the management slate nominees for director and ratification of Andersen as accountant, but also sought to increase the number of directors to nine, with two extra seats to be filled by the convertible debenture holders, and to establish the conversion price for the 6% convertible debentures at an amount between $6 and $12. His proposed letter further warned that if no agreement should be reached on the conversion price and representation, the Browning Committee would commence legal action on the ground that the management's proxy materials were false and misleading.

Because Brewer's statement was submitted only three days prior to the annual meeting, it was not circulated to DASA stockholders. The meeting was held as scheduled, the seven management slate directors were elected, and Andersen was ratified as accountant. On March 9, DASA sent a letter to the 6% convertible debenture holders soliciting their consent for amendments to the indenture that would permit the sale of the computer systems

and reduce the conversion price from $42.42 to $21.

True to Roy Brewer's promise, on March 30, 1972, the Browning Committee filed this action. Count 1 alleged that the proxy materials sent out in connection with the 1972 annual meeting were false and misleading in violation of § 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a–9, principally because they failed to raise the issues regarding the terms of the computer sale that Roy Brewer had sought to raise in his own untimely and therefore uncirculated proxy materials. Count 2 alleged that the DASA annual report for the fiscal year ending October 31, 1971, sent out with the proxy materials, did not give a fair presentation of the company's financial situation. Count 3 charged that in numerous respects the solicitation letter was false and misleading in violation of the Securities Exchange Act of 1934, the Trust Indenture Act of 1939, and the proxy rules, principally on the ground that DASA's directors breached their alleged fiduciary duty to the convertible debenture holders by failing in the solicitation letter to the debenture holders to reveal that the directors' interests as stockholders were opposed to those of the debenture holders and that the conversion price offered as part of the solicitation was unfair to the latter. Claim 4 alleged that the Bank had violated its fiduciary obligations to the debenture holders by failing to press for a lower conversion price in connection with the computer sale. The final count, a derivative claim against Andersen on behalf of DASA, alleged that Andersen had improperly certified the company's 1970 financial statements, despite the inclusion therein of a questionable $1,500,000 goodwill item, and had, in refusing to certify the goodwill item in the 1971 financial statement, failed to indicate why it had changed its mind in the interim.

On April 11, 1972, the Committee sought a preliminary injunction against the computer sale and the change in the conversion price, which was denied by Judge Motley. The necessary two-thirds of the debenture holders gave their consent, the amendments to the indenture became effective on May

15, and the sale of the computers was consummated on June 1, 1972. The Committee appealed the denial of the injunction and, on September 12, 1972, we dismissed the appeal as moot.

On May 19, after the district court's denial of a preliminary injunction, the Committee moved for certification of a class of stockholders and a class of convertible debenture holders, the first class relating to the proxy material claims (Counts 1 and 2) and the second relating to the solicitation letter and conversion price claims (Counts 3 and 4). On January 15, 1973, Judge Griesa, to whom the case had been transferred, deferred ruling "until further discovery proceedings have been completed and further pretrial hearings have been held to narrow or eliminate issues." Shortly thereafter, both plaintiffs and defendants moved for summary judgment on Counts 1 and 2, the disposition of which would largely determine the scope of any class certifications granted. The court granted summary judgment in favor of the defendants, obviating the need for a plaintiff stockholder class. To the extent that the Committee sought injunctive relief, the court held that the claims were moot, since the 1972 annual meeting had been held as scheduled and the proxies exercised. Any damages sought on these counts, the court reasoned, would be entirely speculative, since the proxy materials merely sought proxies in support of the management slate of directors and in favor of ratification of the selection of Andersen as accountant, both of which were supported by the Committee. Plaintiffs appealed under Rule 54(b), and we affirmed. 524 F.2d 811 (2d Cir. 1975).

Five and one-half months after the award of summary judgment to the defendants on Counts 1 and 2, the Committee moved for reargument. Judge Owen, to whom the case had been transferred, denied the motion. The Committee also renewed its motion for class certification, which was denied. Shortly before trial the Committee moved for summary judgment against DASA on a new theory—that the change in conversion price constituted an offering of

a new security within the meaning of § 5 of the Securities Act of 1933, 15 U.S.C. § 77e, requiring registration which had not been effected. On April 16, 1975, the court held that this new claim was time-barred and in orders issued on April 21 and 25 dismissed all claims against Andersen. On April 21, 1975, the court, moreover, ordered the Committee to post a $25,000 bond for costs incurred by the Bank in defending claims against it, as provided by § 10.11 of the indenture and § 315(e) of the Trust Indenture Act of 1939, 15 U.S.C. § 77ooo (e). When the Committee failed to post such a bond the court, on May 13, 1975, dismissed Count 4 against the Bank.

Thus only the Committee's Count 3 claims against DASA actually went to trial. Midway through the trial, the court ruled that the directors had no fiduciary duties to the convertible debenture holders under federal law and thereafter excluded all evidence relating to the alleged lack of fairness of the conversion price offered. At the conclusion of the trial the court found for the defendant, denied the Committee's motion to amend its pleadings to conform to proof, and, after further hearings, awarded attorneys' fees against the Committee in the amount of $40,000 for DASA, $7,000 for Andersen, and $7,000 for the Bank.

## DISCUSSION

The Committee challenges virtually all rulings by the district court that were adverse to it except for the dismissal of Counts 1 and 2, which we have already affirmed. See 524 F.2d 811 (2d Cir. 1975).

*The Merits*

■ We turn first to the district court's dismissal of Counts 4 and 5 of the complaint, since little comment is required. Count 4 alleging that the Bank failed to negotiate a better conversion price for the debenture holders and to make its views known on the adequacy of the conversion price offered, was dismissed after plaintiffs

failed to post a $25,000 bond for costs. The district court clearly had discretion to require the bond. Section 10.11 of the debenture indenture provides, pursuant to § 315(e) of the Trust Indenture Act of 1939, 15 U.S.C. § 77ooo (e), that

". . . each holder of any debenture by his acceptance thereof shall be deemed to have agreed, that any court may in its discretion require in any suit for the enforcement of any right or remedy under this indenture, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit. . . ."

There is no evidence that the district court abused its discretion in fixing a $25,000 bond in this case. Both § 315(a) of the Trust Indenture Act, 15 U.S.C. § 77ooo (a), and the indenture limit the Bank's duties to those specifically set forth in the indenture. It is conceded that the Bank fully performed those duties. Thus the Bank had no duty to negotiate for a fair conversion price or to make known its views regarding the fairness of the price offered. The claim against it is frivolous. We therefore affirm the dismissal of Count 4 against the Bank.

■ Count 5, which alleges derivatively on behalf of DASA that Andersen breached its fiduciary duty by certifying DASA's 1970 Annual Report containing a $1,500,000 goodwill item and by thereafter failing without explanation to certify the same item in the 1971 Annual Report, is moot to the extent that it seeks injunctive relief. Moreover, any damage claim based on these allegations would at best be speculative. The complaint simply alleges no judicially ascertainable damages to DASA resulting from the alleged accounting irregularities.[2]

There remains Count 3 which, in an excessively detailed, prolix, and blunderbuss fashion, alleges numerous grounds on which it is claimed that the March 9, 1972, solicitation letter seeking the debenture holders' consent to the sale of the computer equip-

---

2. Our decision renders it unnecessary to determine whether the district court's alternative ground for dismissal of Count 5—failure to

comply with Rule 23.1 of the Federal Rules of Civil Procedure—must be sustained.

ment violated the debenture holders' rights. First it alleges that the letter (1) failed to reveal the conflict between the directors' interest as stockholders and the interests of the debenture holders in formulating the conversion price, (2) failed to discuss the fairness of the price offered or its method of derivation, (3) failed to discuss the Bank's lack of action with regard to the conversion price, (4) failed clearly to explain the legal effect of the consent solicited, (5) misstated the practical consequences of the sale, (6) misleadingly explained a certain $1,398,500 loss, (7) failed to note that there were differences between the solicitation letter on the one hand and the proxy materials and the 1971 Annual Report on the other, (8) failed to discuss the possible illegality of the financial statements under Massachusetts law, and (9) failed to indicate the future intent of DASA with regard to further reductions in the conversion price. The district court dismissed the count as against Andersen prior to trial on the ground that no facts were alleged warranting its inclusion therein, and granted judgment for DASA after trial.

 To the extent that appellants seek recovery on the ground that DASA's directors breached an alleged fiduciary duty to deal fairly with its debenture holders, see, e. g., *Harff v. Kerkorian*, 347 A.2d 133

(Del.1975), it is clear since the Supreme Court's recent decision in *Green v. Santa Fe Industries, Inc.*, 430 U.S. 954, 97 S.Ct. 1597, 51 L.Ed.2d 803 (1977), that no such duties are imposed by federal law upon corporate directors and that violation of any such state-law fiduciary duties, including non-disclosure of conflicts of interest or unfairness of a conversion price,[3] will not support a claim of constructive fraud under § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n.[4] Appellants' argument that the solicitation letter misstated the legal and practical consequences of the consent and sale must also be rejected, essentially on the grounds stated by Judge Owen in his January 8, 1976, opinion, which analyzes each of the fraud claims in detail.[5]

The remaining allegations of Count 3 attack a number of unrelated purported deficiencies in the solicitation letter, each of which is either baseless or unsubstantiated. For instance it is alleged that a cross-reference was needed to dispel a misleading impression given at one point in the letter to the effect that a certain $1,398,500 loss was nonrecurring (¶ 22(*o*)) and that the letter failed to reveal conflicts between the letter on the one hand and the proxy materials and the 1971 Annual Report on the other (¶ 22(n)). We agree with the district court that there are no such conflicts or misleading impressions. Furthermore, although

3. First Amended Complaint ¶¶ 22(a)–(d), (*l*).

4. *Id.* ¶¶ 22(e), (m).

5. The complaint alleges that the letter failed to state that if consent were given but the sale not be consummated the directors would retain the power to sell the computers without having to seek further consent from the debenture holders. First Amended Complaint, ¶ 22(k). The first page of the letter, however, makes clear that the purpose of the amendment is "to provide DASA and its subsidiaries with the flexibility to sell, *at any one time or from time to time,* all or part, of the computer systems. . . ." (emphasis added). The complaint also alleges that the letter falsely implied that in the absence of consent DASA would be forced into liquidation and the debenture holders would get nothing at all, whereas in fact there remained $4,000,000 in unencumbered assets to satisfy their claims. *Id.* ¶ 22(q). At the same time, the complaint inconsistently alleges that the letter fails to note that the sale may

result in the elimination of all assets as to which the debenture holders have a preferred position, so that the debenture holders would end up with nothing at all in the event of liquidation. *Id.* ¶ 22(r). Besides being contradictory, these allegations ignore the extensive explanation of the various assets shown in the balance sheet included in the letter. Next, the complaint alleges that the letter falsely asserts that the sale will improve the company's working capital position, since the sale is primarily for payment of the company's debts. *Id.* ¶ 22(r). An examination of the letter reveals, however, that the letter carefully and fully explains the purposes to which the proceeds of the sale will be put, including the augmentation of working capital. Finally, the complaint alleges that the letter fails to discuss the tax consequences of the transaction. *Id.* ¶ 22(t). Appellants, however, have failed to indicate what tax consequences should have been discussed.

Count 3 alleges that the financial statements may not have complied with Massachusetts law, ¶ 22(i)–(j), there was a complete failure to adduce any supporting proof of this charge at trial. In addition, we affirm the dismissal of appellants' claim that the letter uses confusing terminology in referring on the one hand to the "computer systems, peripheral equipment and leases thereon," which were to be sold, and on the other to "approximately $4,000,000 in tangible property comprised principally of data processing rental equipment and supplies and [other] property and equipment," which might be used to secure further borrowing, ¶ 22(p), since we find no confusion in these references when taken in context.

Finally, we affirm the district court's rejection of appellants' allegation in Count 3, ¶ 22(u), that the solicitation letter did not disclose that DASA contemplated offering a further reduction in conversion price only to those who would agree to convert their debentures for stock immediately. Although we are hampered in our review of this question by appellants' failure to include the pertinent portions of the trial transcript as part of the record on appeal, we are satisfied that DASA was under no obligation to discuss this option in the solicitation letter. Indeed to do so could be misleading, for the statement would imply that those who tendered promptly would receive the reduced conversion price. However, if all security holders tendered promptly, the company might be unable to fulfill the promise. Such an offer, assuming it was made, would moreover indicate that the debenture holders were not harmed by the alleged failure to offer a fair conversion price in return for their consent to the sale.

The judgment in DASA's favor on the merits must accordingly be affirmed.[6] The dismissal of Count 3 against Andersen is also affirmed, in view of its failure to allege any wrongdoing on Andersen's part. Finally, because we conclude that the directors were under no federal fiduciary duties to deal fairly with the debenture holders, we hold that it was not error for the district court to exclude evidence relating to the fairness of the conversion price offered.

*Denial of Appellants' Post-Trial Motion to Amend the Complaint*

Following the trial, appellants moved to amend the pleadings to conform to the proof by adding numerous new paragraphs to their complaint. The motion was denied on the grounds that unlimited opportunity to amend had existed before trial, that the issues had been specifically limited, and that there had been no express or implied consent to trial of other issues. See F.R. Civ.P. 15(b).

Some of the proposed new paragraphs merely elaborate claims made in the original complaint.[7] Whether or not the district court should have permitted such amendments is academic, in view of our affirmance of dispositions against the appellants on each of these claims. Other proposed amendments, however, raise a number of new claims, including allegations that the solicitation letter (1) overstated DASA's assets by inclusion of a $1,500,000 goodwill item, (2) misstated the nature and extent of the company's cash flow position, (3) failed to disclose the desire of the Browning Committee that debenture holders withhold consent to the sale until DASA offered a more favorable conversion rate, and (4) did not contain complete responses to comments by the SEC. Plaintiffs further sought to add the claim that DASA wrongfully prevented the Committee from soliciting proxies in opposition to DASA's effort to obtain consent for the sale.

**6.** Paragraphs 22(f)–(h) and 22(s) of the First Amended Complaint were withdrawn prior to or during trial.

**7.** Examples are the claims that the stockholder-directors owed a fiduciary duty to the debenture holders, Proposed Amendment ¶¶ (w), (z) & (nn), that the letter failed adequately to explain a $1,389,500 loss, *id.* ¶¶ (x), (jj), (kk) & (*oo*), that the letter failed to indicate the extent to which the debenture holders' security would be impaired by the sale, *id.* ¶¶ 22(dd), (*ll*)–(nn), and that there existed conflicts between the letter and the 1971 Annual Report, *id.* ¶ 22(ff).

■ Although leave to amend pleadings should be freely given when justice requires, the trial judge's discretion is broad and its sound exercise usually depends on the presence or absence of such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). See also *Freeman v. Marine Midland Bank-New York*, 494 F.2d 1334, 1338 (2d Cir. 1974); *Scranton Volunteer Fire Co. v. U. S. Fidelity & Guaranty Co.*, 450 F.2d 775, 777 (2d Cir. 1971); *Mooney v. Vitolo*, 435 F.2d 838 (2d Cir. 1970). In a motion under rule 15(b) to amend the complaint to conform to the proof, the most important question is whether the new issues were tried by the parties' express or implied consent and whether the defendant "would be prejudiced by the implied amendment, i. e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory." 3 Moore's Federal Practice ¶ 15.13[2], at 993 (2d ed. 1966); *Lomartira v. American Automobile Insurance Co.*, 371 F.2d 550 (2d Cir. 1967). See *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Rogers v. Valentine*, 426 F.2d 1361, 1362–63 (2d Cir. 1970); *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir. 1968); *Middle Atlantic Utilities Co. v. S. M. W. Development Corp.*, 392 F.2d 380, 384–85 (2d Cir. 1968); *Cramer v. Hoffman*, 390 F.2d 19, 22 (2d Cir. 1968). The purpose of Rule 15(b) is to allow the pleadings to conform to issues actually tried, not to extend the pleadings to introduce issues inferentially suggested by incidental evidence in the record. *Cole v. Layrite Products Co.*, 439 F.2d 958, 961 (9th Cir. 1971); *Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir. 1969).

■ Applying these standards here, we are satisfied that the trial judge acted well within the scope of his discretion in refusing to allow appellants, after the trial, to add to Count 3 a claim that the inclusion of a $1,500,000 goodwill item in the solicitation letter was misleading and improper. Although Counts 2 and 5 of the complaint, both of which had been dismissed, referred to the impropriety of including the goodwill item in DASA's 1971 Annual Report, not the solicitation letter, the issues presented by these dismissed claims were never tried, since the claims, as we have concluded, were properly dismissed. Moreover, even if these issues had been tried, they would have differed from the new claim which appellants sought to add after the trial, which related to the solicitation letter. The new claim simply had never been tried by the express or implied consent of the parties. To allow the addition of this claim after trial would substantially prejudice DASA, which surely would have wanted to adduce additional evidence if the issue had been raised and tried.

Moreover, the record indicates that the inclusion of the $1,500,000 asset in the solicitation letter was not misleading. The Committee contends that the inclusion of the figure as an item attributable to DASA's field service organization was improper for the reason that, once the computers were sold, the field service organization would have nothing to service. However, DASA's 1971 Annual Report and other documents of record indicate that its field service organization serviced "unit record equipment," none of which was involved in the sale for which consent was being solicited, as distinguished from the computers, including IBM Model 360s, which were serviced by the manufacturer rather than DASA. Thus the $1,500,000 item was speculative only to the extent that it depended for its realization on the continued success of the unit record equipment leasing business. In addition, as a result of the termination of DASA's supply contract with Western Electric and an FCC ruling allowing DASA to supply Magicall units directly to telephone customers, DASA's management anticipated that the field service organization could also be utilized in

the retail distribution and installation of Magicall units, in which it had not previously been involved. Under the circumstances, we believe that the solicitation letter adequately revealed the extent to which realization of this intangible asset was contingent on proper future utilization of the service organization. See Proposed Amendment, ¶¶ 22(v), (a), (bb) & (gg).

The same problems are presented with respect to the Committee's attempt to add allegations, see ¶¶ 22(cc), (aa), (bb) & (gg), that the letter misstated the nature and extent of the company's cash flow position. The original complaint did allege that the letter incorrectly represented that the sale would improve the company's working capital position, a claim which we have considered and rejected. Nevertheless, whether the company's cash flow problem was more serious than the letter represented involves different evidence, which DASA has had no opportunity to introduce or rebut.

The Committee's remaining proposed claims require little or no comment. The proposed allegation, ¶ 22(y), that the solicitation letter failed to disclose that the Committee wanted the debenture holders to withhold their consent until a more favorable conversion rate was granted is completely new. The new allegation, ¶ 22(ii), that the solicitation letter did not completely respond to the SEC's comments fails to state what SEC comments remained unanswered. Finally, the attempt, see ¶ 22–A, to allege that DASA prevented the Committee from waging a proxy battle against the solicitation effort clearly presents a new factual claim, allowance of which after trial would prejudice DASA, which had no notice or opportunity to offer rebuttal evidence. We therefore conclude that the district court did not abuse its discretion in refusing to consider these new claims, as distinguished from new theories, which appellants attempted to raise after trial.

■ Appellants' final contention is that the district court erred in summarily refusing to grant their eve-of-trial motion to amend their complaint to claim that the solicitation and change in conversion rate constituted the offer and sale of a new security subject to the registration requirements of § 5 of the Securities Act of 1933, 15 U.S.C. § 77e, which DASA failed to register. Prior to the eve of trial appellants had never suggested that the change in conversion rate was sufficiently significant to create a new security requiring registration. See 1 Loss, Securities Regulation 514 (2d ed. 1961). Their consistent contention had been that the change should have been much greater. Accordingly DASA was led to prepare a case in support of the proposition that the proffered conversion rate was fair.

To have permitted appellants to amend their complaint to allege the necessary elements of a § 5 claim on the eve of trial would have substantially prejudiced DASA, forcing it to prepare a new factual case on the overall marketplace significance of the change in conversion rate. For this reason we hold that Judge Owen did not abuse his discretion in refusing to allow this amendment.[8]

### The Award of Attorneys' Fees

Having concluded that appellants' case was without merit, the district court awarded attorneys' fees to the defendants. Under the American Rule, every party to a case bears its own attorneys' fees, and a court will not ordinarily assess such fees except to the extent that the assessment is specifically authorized by Congress. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247–71, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F. D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 126–31, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). An exception is made when a party has "acted in bad faith, vexatiously, wantonly, or for op-

---

8. We therefore need not reach the question of whether the § 5 claim would be barred by the statute of limitations, see *Gridley v. Sayre & Fisher Co.*, 409 F.Supp. 1266, 1270–71 (S.D.S.

D.1976); *Wassel v. Eglowsky*, 399 F.Supp. 1330, 1358–60 (D.Md.1975), or the merits of that claim.

pressive reasons." *Alyeska Pipeline Co.*, 421 U.S. at 258–59, 95 S.Ct. at 1622; *F. D. Rich Co.*, 417 U.S. at 129, 94 S.Ct. 2157; *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). The district court found that appellants had acted in bad faith in instituting and maintaining this action, relying on evidence that what appellants really sought was a further reduction in the conversion price and on the conduct of Bradley Brewer in prosecuting the case as plaintiffs' counsel.

■ An action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons. Otherwise those with colorable, albeit novel, legal claims would be deterred from testing those claims in a federal court. Prior to the Supreme Court's decision in *Green v. Santa Fe Industries, Inc.*, 430 U.S. 954, 97 S.Ct. 1597, 51 L.Ed.2d 803 (1977), *rev'g* 533 F.2d 1283 (2d Cir. 1976), appellants' argument that DASA's directors had a fiduciary duty to deal fairly with the debenture holders was at least colorable and provided a fair ground for litigation. The fact that the present suit was instituted to force a further reduction in the conversion price does not necessarily mean that it was brought in bad faith. Appellants' argument was that the directors' alleged fiduciary duties required them to offer a fair price and that the price offered was too high to meet this obligation. This was a colorable claim although, as *Green* later made clear, not one that may be presented under federal law.

Nor is there any evidence that Andersen was added as a defendant for purposes of harassment or delay. Having alleged that the directors violated a fiduciary duty to the bondholders and used a variety of material misstatements in financial statements that Andersen had certified, on which bondholders presumably relied in consenting to the sale, appellants' inclusion of Andersen was not illogical. Since we have concluded that the action against the main defendant, though not maintainable under federal law, was not brought in bad faith, there is no basis for finding that secondary defendants have been added in bad faith unless there is clear evidence that the claims against them were entirely without color and made for reasons of harassment or delay or for other improper purposes. Our conclusion that Andersen was not added as a defendant in bad faith is reinforced by the fact that Andersen failed to move to dismiss Claims 3 and 5 until the eve of trial. If appellants' claims were completely without color, Andersen could easily have protected itself with an early motion to dismiss.

■ Different considerations govern the award of fees to the Bank. Section 315(e) of the Trust Indenture Act, 15 U.S.C. § 77 *ooo* (e), provides that a court

"may in its discretion assess reasonable costs, including reasonable attorney's fees, against any party litigant in such suit, having due regard to the merits and good faith of the claims or defenses made by such party litigant."

In view of this explicit provision and that in the indenture, the district court did not abuse its discretion in deciding that the Bank was entitled to reasonable attorneys' fees. The proper measure, however, should be the cost of services and research reasonably required to obtain a dismissal of the claim against the Bank, not necessarily the amount actually incurred. The Bank may not recover attorneys' fees based on a protracted defense if it could have minimized the disbursement by obtaining an earlier dismissal.

■ The court's award of attorneys' fees to DASA and Andersen based on procedural bad faith or harassment also stands on a different footing. There was ample evidence to support a finding that Bradley Brewer acted in bad faith in taking some procedural steps (e. g., the appeal of mooted issues, the delay for discovery never undertaken, the motion for reargument made 5½ months after denial of appellants' motion for summary judgment, the making of frivolous motions for summary judgment against the Bank and Andersen, the motion to add parties on the basis of a misleading page of a letter taken out of context, the

dragnet subpoenas served on Andersen and others, the threats to depose numerous Bank officers, etc.). However, in an action not itself brought in bad faith, an award of attorneys' fees should be limited to those expenses reasonably incurred to meet the other party's groundless, bad faith procedural moves. No attempt was made below to relate claimed expenses, costs, and fees to particular bad faith maneuvers. See *In re Boston & Providence R.R. Corp.*, 501 F.2d 545, 550 (1st Cir. 1974). Accordingly, we remand for more specific findings as to those procedural motions or other actions undertaken in bad faith, without justification or for an improper purpose, such as harassment or delay, and as to the expenses, costs, and attorneys' fees reasonably incurred by the opposing party or parties in meeting such improper motions, actions, or delays.

Bradley Brewer's procedural bad faith, moreover, may not automatically be visited upon the other plaintiffs personally. Bad faith is personal, see *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Since an award of costs or attorneys' fees based on bad faith must likewise be personal, such an award may be assessed against plaintiffs Roy E. Brewer or Simms C. Browning only after reconsideration and such hearing as the district court finds necessary, that they personally were aware of or otherwise responsible for the procedural action instituted in bad faith. Otherwise, such awards may be assessed only against Bradley Brewer under 28 U.S.C. § 1927. See *Acevedo v. Immigration and Naturalization Service*, 538 F.2d 918 (2d Cir. 1976).

*Miscellaneous Other Claims of Error*

We find each of the other grounds of error asserted by appellants to be without merit. With respect to the denial of their motion pursuant to Rule 30(b)(4), F.R. Civ.P., for an order authorizing them to conduct their depositions through the use of multiple, simultaneous tape recorders, we are satisfied that whatever may be the scope of a trial court's discretion under Rule 30(b)(4), see *UAW v. National Caucus of Labor Committees*, 525 F.2d 323, 325–26 (2d Cir. 1975), the denial of the motion, even if

error, was harmless in this case, in view of our ruling that the directors owed no federal fiduciary duties to the bondholders here, thereby eliminating any need for depositions on the question of the directors' intentions and good faith. Nor is there any indication that plaintiffs were surprised by testimony at trial.

The contention that Judge Owen should have recused himself and transferred the case to another judge must be viewed as frivolous. It is unsupported by any evidence of prejudice, impropriety, or even the appearance of impropriety on Judge Owen's part. In view of our decision on the merits, the denial of appellants' motion for class action determination becomes academic. The dismissal under Rule 41(b), F.R.Civ.P., of claims against certain directors was entirely proper, since appellants did not attempt to serve them until one week prior to trial. *Joseph Muller Corp. Zurich v. Societe Anonyme de Gerance et D'Armement*, 508 F.2d 814 (2d Cir. 174); *Messenger v. United States*, 231 F.2d 328 (2d Cir. 1956).

We therefore affirm on the merits and as to all collateral issues raised on appeal except the award of attorneys' fees, which is remanded for a redetermination in accordance with this opinion. Costs will be assessed against appellants.