**PICKWICK ENTERTAINMENT, INC., Plaintiff,**

v.

**Kathleen M. THEIRINGER, Defendant.**

No. 5:91 CV 32 (GLG).

United States District Court,
D. Connecticut.

Sept. 14, 1995.

Paul L. Bollo, Danbury, CT, for plaintiff.

Stewart I. Edelstein, Jennifer Landsman Chobor, Cohen & Wolf, P.C., Bridgeport, CT, for defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

At the conclusion of plaintiff's case, defendant moved for entry of judgment and plaintiff moved to amend the complaint. Upon request of the parties, the continuation of the trial, if necessary, has been adjourned *sine die.*

This case involves a license agreement between Pickwick Communications, Inc. ("Communications") and Pickwick Entertainment, Inc. ("Entertainment") the plaintiff here, for certain master recordings, collectively referred to as the "Pickwick Catalogue." From the license agreement, it was apparent that the licenses along with the master recordings being conveyed from Communications to Entertainment, fell into three categories. There were two sets of master recordings as to which actual written contracts existed and which were transferred. Those two sets are not involved in the instant action. A second set of contracts and master recordings (List B), which belonged to Communications but for which "written contracts" had not yet been located, are the focus of this action. A third set (List C) concerned master recordings where the license agreement clearly indicated there would be difficulty in establishing any valid licenses to the masters.

The license agreement had an integration clause to the effect that it was the only agreement between the parties and no other agreement or stipulations pertinent to the subject matter would be valid unless in writing. Communications and Entertainment subsequently had disputes concerning the license agreement. This led to a reinstatement agreement in which *inter alia* Entertainment acknowledged that they had sufficient familiarity and knowledge concerning the licenses and masters to fully appraise their value and utility and that, with certain limited exceptions, none of the representations and warranties contained in the license agreement should be deemed to have survived. These "agreements" have resulted so far in four lawsuits. In one of them, to which subsequent reference will be made, Communications successfully sued Entertainment and Entertainment's counterclaim concerning, *inter alia,* missing licenses was dismissed.

Before the initial license agreement was signed (in June 1988), Entertainment knew that Communications has just acquired the "Pickwick Catalogue" which had been dormant for some years, and had not yet substantiated its exclusive rights to all of the Pickwick masters at that time. The defendant herein, Kathleen M. Theiringer, was employed by Communications and was attempting to determine what rights it had in the Pickwick Catalogue when Entertainment bought the Catalogue (what John Heywood's *Proverbs* (1546) might have referred to as a "pig in the poke"). Theiringer arranged shipment of the masters and written materials concerning licenses from Minnesota to Connecticut and, having then been hired by Entertainment, was responsible for their unpacking in Connecticut. She was principally responsible for supervision of the Catalogue contract and the attempt to determine rights, but the contracts were accessible to all of the other scores of Entertainment employees.

The defendant was employed by Entertainment first as an employee for about a year and then she was brought back later for about one half of a year as a consultant. At the time of her final departure from Entertainment, she took with her two boxes, which she identified as being her personal possessions. After she left, other Entertainment employees continued with their efforts to

clarify contract rights in the Catalogue. They were to a large extent unsuccessful. The claim is now made that when Miss Theiringer left she either stole vital contracts, retained documents that she should not have, or was, by virtue of her negligence, responsible for the contracts being lost.

The plaintiff moves to amend its complaint to add two new claims which are, essentially, that she participated in a cover-up concerning the absence of licenses either by conspiring with the Communications' people or by making negligent misrepresentations concerning what licenses existed.

### THE MOTION FOR ENTRY OF JUDGMENT PURSUANT TO FED.R.CIV.P. 52(c)

■ The principal weakness in the plaintiff's case on all causes of action, except perhaps the proposed negligent misrepresentation claims, is that plaintiff has failed to prove that it ever possessed any contracts which are now missing. Indeed, in its earlier action with Communications it alleged in its counterclaim that "most of the significant selections in the Pickwick Catalogue were not owned by Communications. . . ." (Plaintiff also sued two law firms concerning their involvement in the unprofitable acquisition).

Plaintiff produced several witnesses who testified on this issue. About the most that they established was that there were binders or books of documents which they could not locate after the defendant left the plaintiff's employ. The closest any witness came to stating that the missing documents were contracts was the testimony of plaintiff's president, Jan Weinberg, who stated that certain documents looked like letters relating to a contract. In his deposition, however, he admitted that he couldn't tell whether they were contracts or not. Moreover, even assuming that certain contracts are now missing, we have no notion as to which contracts they are. If plaintiff were seeking replevin of the contracts, it would be impossible to draft an order directing their return. The only evidence suggesting that the defendant

may have taken some documents concerned the two boxes of materials she removed, which she maintains were her personal possessions.

There are two additional points that argue strongly against the plaintiff's claims. In the first place, any missing licenses are not freely negotiable instruments. We cannot conceive of what possible use the defendant could make of any contract documents which had been transferred from Communications to Entertainment that she might have in her possession. Moreover, there appears to be no reason why, if in fact license rights belong to Entertainment, it cannot establish its licenses through secondary evidence. Finally, we know of no way of valuing the plaintiff's damages without knowing what specific contracts were involved.[1] Nevertheless, with a single exception, we are not persuaded to grant the motion to dismiss at this time. Under Rule 52(c), F.R.Civ.P., we are permitted to wait until the close of evidence to render a judgment, and since that should not take more than one additional day of court time, that seems the more prudent course.

■ There is one cause of action that raises solely a legal issue and that is the fourth cause of action purportedly based on a breach of fiduciary duty. In Connecticut, a fiduciary is a person who is in a unique position of trust and confidence and owes a duty to represent the interests of another. *Dunham v. Dunham,* 204 Conn. 303, 528 A.2d 1123 (1987). Defendant was not an officer or director of plaintiff. While any employee certainly owes an obligation to his or her employer not to steal its property, such duty exists outside the parameters of a "fiduciary" duty owed to the employer. Since the claim of breach of fiduciary duty adds nothing to the plaintiff's cause of action and since the evidence does not support the existence of a fiduciary duty, that claim is dismissed.

### PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Toward the end of the second day of trial of this action, when the only remaining wit-

---

1. Plaintiff argues that its overall losses in buying and attempting to develop the Catalogue are sufficient to establish its damages. Since it is clear that much more is involved in the profitable development of the Catalogue than simply having certain of the licenses and since we do not know which ones are missing, there is inadequate proof of damages.

ness was the defendant, the plaintiff moved pursuant to Rule 15(b), F.R.Civ.P., to amend its complaint to add two new causes of action. Plaintiff's threshold position was that since the Rule provides in part that, if evidence is objected to at the trial on ground that it is not within the issues framed in the pleadings, the Court shall allow the pleadings to be amended unless the objecting party fails to satisfy the Court that the admission of such evidence would prejudice that party. In plaintiff's view, the function of Rule 15(b) is to allow presentation of any evidence so long as it is accompanied with an amendment of the pleading.

■ The purpose of Rule 15(b) is in no way so broad or so liberal. Rule 15(b) motions, which are usually made at the conclusion of the plaintiff's case, are intended to correct the theory of an existing claim and not to assert new and different claims. As the Second Circuit stated in *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1086 (1977),

> [t]he purpose of Rule 15(b) is to allow the pleadings to conform to issues actually tried, not to extend the pleadings to introduce issues inferentially suggested by incidental evidence in the record. *Cole v. Layrite Products Co.*, 439 F.2d 958, 961 (9th Cir.1971); *Monod v. Futura, Inc.*, 415 F.2d 1170, 1174 (10th Cir.1969).

The Court concluded that the District Court did not abuse its discretion in refusing to consider new claims, as distinguished from new theories which appellants attempted to raise after trial. Indeed the Court also upheld a refusal to amend the complaint, which motion was made prior to (but on the eve of) trial, which would have prejudiced the defendant by forcing it to prepare a new factual case. *Browning Debenture Holders' Committee, supra,* 560 F.2d at 1087.

■ One of the new claims which plaintiff seeks to assert is a purported conspiracy between the defendant and her previous employer, Pickwick Communications, Inc., to conceal the fact that the rights to the bulk of the Pickwick Catalogue were questionable. As such it constitutes an attempt to retry the counterclaims which were asserted in the earlier litigation between Pickwick Communi-

cation, Inc. and Pickwick Entertainment and were decided adversely to Pickwick Entertainment in the Southern District of New York. *Pickwick Communications, Inc. v. Jan Weinberg, et al.,* 91 Civ. 1642 (AGS), 1994 WL 620950 (S.D.N.Y. Nov. 7, 1994). While that is an old claim for the plaintiff, it was not one asserted against this defendant in this litigation. There are a number of reasons why it cannot be allowed at this time.

First, such a claim was not tried by the express or implied consent of the defendant. Indeed her counsel objected to all such efforts and had previously moved in limine to foreclose any consideration of aspects of that case as having been already decided, thereby collaterally estopping the plaintiff. There is no direct evidence presently in the record to which such a pleading could conform. *Rogers v. Valentine,* 426 F.2d 1361 (2d Cir.1970). The claim relates to an earlier period of time than that pleaded in the complaint, and the defendant was not on notice that such a charge would be made against her. Clearly she would be prejudiced by allowing the amendment as to which she did not conduct any discovery whatever and did not cross examine the plaintiff's witness.

This action was commenced more than four years ago and concerns events which occurred seven years ago. To grant a continuance and initiate discovery on these matters at this time would be impractical. Some of the pertinent witnesses have died and, since the alleged co-conspirators are not specifically named (simply as licensors), the parameters of discovery cannot now be defined. No excuse is set forth as to why, if there was a basis for this complaint, it was not made many years ago.

Defendant also argues that any such amendment would be futile in light of the facts in the case and the earlier rulings in the related action. Defendant adds that the elements of a civil action for a conspiracy are not adequately set forth in the proposed pleading, and that the evidence presented to date does not establish any of the necessary elements of a civil conspiracy. Defendant particularly points to portions of the licensing agreement which has a complete integration

clause whereby the plaintiff acknowledged that it did not rely on any representations other than those contained in the licensing agreement. In addition the later reinstatement agreement has further limitations on representations and warranties. Finally defendant points out that any claim of civil conspiracy occurring in the late 1980's would be time-barred and that there is no basis for treating the new claim as relating back to the original pleading. While the defendant is quite likely correct about all of these additional problems, we deny the motion to add a claim of civil conspiracy based on the lack of consent to the trial of the count, the absence of any proof in the record through the conclusion of the plaintiff's case to support it, and the prejudice to the defendant of allowing an amendment at this time on matters not previously involved in the case.

■ The other proposed amendment would add a cause of action for negligent misrepresentation. The problems with allowing an amendment to conform to the proof are still substantial but not as great as they are with respect to the claim of civil conspiracy. The existing complaint essentially charges the defendant with negligence and conversion. The negligent misrepresentation might be considered a variation in theory on the negligence that the plaintiff has attempted to prove. The absence of discovery is not as severe a problem since the cause of action turns almost entirely on the defendant's own actions and knowledge and not on that of the purported co-conspirators. Moreover, there is no collateral estoppel defense as such, since the defendant's actions were not litigated in New York. (The issue of reliance, however, persists.)

We presently have no knowledge of what the defendant's testimony will be (completion of the trial having been postponed at the request of both parties), and it is possible that the defendant's testimony might make this an appropriate case for an amendment to conform the pleadings to the proof on the issue of negligent misrepresentation. After we have heard the defendant's testimony we can better decide whether a cause of action for negligent misrepresentation should be considered. Even if it can be shown that the defendant made negligent misrepresentations, the plaintiff will still have to deal with the numerous problems concerning the integration clause in the licenses, a release given by the plaintiff to Pickwick Communications, Inc. and its employees and the strong proof that plaintiff relied upon the evaluations of other parties, including its own attorneys, in determining the validity of the licenses purportedly being assigned. These things can well be better evaluated after the defendant has testified.