**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

**Securities Investor Protection Corporation, Applicant,**

v.

**HAVENER SECURITIES CORP. et al., Defendants.**

**Bankruptcy No. 72 Civ. 4350 (EJR).**

United States Bankruptcy Court, S. D. New York.

Dec. 23, 1980.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for Trustee; Howard P. Roy, New York City, of counsel.

Emmet, Marvin & Martin by Dennis Fleischmann, New York City, for Fahnestock & Co.

Theodore H. Focht, Gen. Counsel, Washington, D. C., for plaintiff and applicant.

EDWARD J. RYAN, Bankruptcy Judge.

By decision dated January 22, 1980, this court confirmed the "Determination of the Trustee" for Havener Securities Corp. ("Havener"), dated August 4, 1975, which determination disallowed an open contractual commitment claim filed by Fahnestock & Co. ("Fahnestock") pursuant to Section 6(d) of the Securities Investors Protection Act of 1970, 15 U.S.C. § 78fff(d) ("SIPA"). The decision also awarded in favor of the trustee, attorneys' fees incurred in connection with the trustee's extensive investigation of Fahnestock's claim and the making of Havener's cross-motion for summary judgment. The award was based on this court's finding that Fahnestock, contrary to fact and actual good faith belief, wantonly asserted, both prior to filing its claim in the "Objection to the Determination of Trustee" and in its subsequent motion before this court pursuant to its open contractual commitment claim against the trustee, that First National City Bank ("FNCB") was Fahnestock's ultimate customer.

Fahnestock knew, or at least had reason to know that its representations that FNCB was Fahnestock's ultimate customer were

untrue; hence, Fahnestock acted in bad faith in proceeding against the trustee. Therefore, this court, in the exercise of its discretion, deemed it appropriate for Fahnestock to bear the expenses incurred by the trustee, rather than imposing the trustee's counsel fees on the public funds advanced by SIPC.

By notice of motion, dated April 16, 1980, Fahnestock moved this court pursuant to Federal Rules of Civil Procedure Rule 60(b), for leave to reargue that portion of this court's January 22, 1980 decision assessing attorneys' fees against Fahnestock. A hearing on Fahnestock's motion was held on June 18, 1980. Reargument is granted and on reargument the decision is adhered to. An evidentiary hearing will be held in due course on the matter of the amount of fees to be assessed.

█ The general American rule concerning the costs of litigation is that each party is to bear its own costs, regardless of the outcome of the litigation. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). However, there are various exceptions to this general rule, among them "there is the exceptional power to shift fees where an action has been commenced or conducted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980), quoting *F. D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Matter of Love*, 577 F.2d 344 (5th Cir. 1978); *Sherr v. Winkler*, 552 F.2d 1367, 1377 (10th Cir. 1977).

█ For a finding of bad faith there must be clear evidence that the questionable assertions are entirely without color and made for reasons of harassment or delay or for other improper purposes. *Nemeroff v. Abelson, supra,* citing *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2d Cir. 1977).

A claim is colorable and therefore not made in bad faith, according to *Nemeroff*, "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim 'might be established', not whether such facts actually 'had been established.'" *Nemeroff, supra,* at 348.

Fahnestock made the factual assertion that FNCB was its ultimate customer and that FNCB was acting for its own account and not for the account of those persons believed by the trustee to be the customers in the October 1972 transaction involving 6,000 shares of the common stock of Power Conversion, Inc. ("PCI"). The issue is whether such a claim was made with any perceptible basis.

A thorough review of all of the evidence presented in this case shows that there was no legal or factual support for Fahnestock's claim. In view of Fahnestock's own actions and admissions, as well as the other evidence submitted, no reasonable person could have concluded that any acts supporting Fahnestock's claim might be established. There just are no facts in evidence from which a reasonable person might conclude that FNCB was acting for its own account in the PCI transaction, and not for the account of those persons believed by the trustee to be the true principals of the transaction.

The documents which lead to this inevitable conclusion include:

1. Exhibit G to the affidavit of Howard P. Roy, Esq., sworn to August 17, 1978 ("Roy Affidavit"): A letter dated January 4, 1973, from John J. Blanchard, general counsel for Fahnestock, to the New York Stock Exchange, which letter states in pertinent part, "[I]t is my understanding that the individual who was selling these shares through JAB Securities was Mr. William Rodman, who the Securities Exchange Commission says, 'was deeply involved in the skeem [sic] to defraud and minipulate [sic] the market in Power [Conversion Stock].'"

This letter from Fahnestock's general counsel reveals Fahnestock's understanding as of January 4, 1973, shortly after the

October 6, 1972 PCI trades, that the principal behind the trades was Mr. William Rodman.

2. Exhibit F to Roy Affidavit:

An affidavit dated November 21, 1973, sworn to by M. Donald Grant, Fahnestock's senior member, in which Mr. Grant states, "... [T]he Securities and Exchange Commission began an investigation ... and the alleged manipulator was indicated as a party dealing with the [PCI] shares involved in the [October 6] sale."

Mr. Grant's affidavit indicates that he knew, as early as November 1973, that a manipulator (either William Rodman or Thomas G. Zammas) was a party to the trade—the ultimate principal.

3. Exhibit A to Roy Affidavit:

FNCB complaint filed in July 1973 in Federal Court against Thomas G. Zammas and Dorothy J. Zammas alleging, *inter alia*, that it was continuing to hold securities "for the account of Thomas Zammas." This pleading is indicative of the fact that FNCB had not closed out or liquidated Zammas' account, but rather that the Bank had been making sales for that account.

4. Exhibits C and D to Roy Affidavit:

Trade tickets signed by Rodman and Zammas, respectively, which state, "... [Y]ou [FNCB] will act hereunder as the agent of the undersigned and not as principal ...." The language of the trade tickets would not be any more explicit; both Rodman and Zammas (albeit retroactively) authorized FNCB, as agent, to trade in the PCI stock for their respective accounts.

5. Exhibit B to Roy Affidavit:

FNCB complaint filed August 1973, in State Court against William Rodman alleging, *inter alia*, that FNCB's attempted sale of Rodman's 3,800 shares of PCI stock was initiated pursuant to Rodman's written authorization. In other words, FNCB was acting as Rodman's agent and solely for his account.

6. Exhibit H to Roy Affidavit:

Zammas' third-party complaint against Fahnestock in FNCB's Federal Court action, served prior to November 1974, and alleging that, "[a]t all times relevant hereto First National City Bank was acting merely as agent for counter-plaintiff [Zammas] in the transaction involving the Power Conversion Stock transfer ...."

7. Exhibit I to Roy Affidavit:

Fahnestock's answer to Zammas' third-party complaint, which answer was filed in November 1974 and whose language was quoted by this court in its January 22, 1980 decision to the effect that Fahnestock itself alleged the existence of an agency relationship between FNCB and Zammas.

Fahnestock did not plead this allegation hypothetically, nor was it compelled to adopt the characterization that Zammas made in his complaint. The language in the November 1974 Pleading unequivocally states Fahnestock's understanding of the agency relationship existing between FNCB and Zammas.

Exhibits F, G, and I to the Roy Affidavit indicate Fahnestock's own awareness as early as January 4, 1973, of the agency relationship which existed between FNCB and Zammas and Rodman.

Exhibits A, B, C, D, and H indicate the positions of the only three entities or individuals with actual knowledge of the relationships involved in the PCI transaction— FNCB, Rodman and Zammas. Fahnestock, of course, is not bound by the formers' assertions of an agency relationship; but, Fahnestock is charged with knowledge, actual or constructive, prior to September 1975, when it filed its objection to the trustee's determination that all of the parties to the transaction had gone on record alleging an agency relationship existing between FNCB and Rodman and Zammas relating to the PCI transaction.

■ Even if Fahnestock's investigation in preparing its extensive answer in the third-party action did not reveal FNCB's, Rodman's and Zammas' respective positions concerning the PCI transaction, Fahnestock had available to it everything in FNCB's files upon which the latter based its verified pleading in State Court alleging that it was

acting only as an agent in the PCI transaction. FNCB's documents were available to Fahnestock as early as March 1974, when the two entities entered into a formal agreement, prompted by the "long-time relationships involved", to share the loss resulting from the aborted trades in PCI stock. (See Exhibits B and C to the Reply Affidavit of E. Stephen Walsh, sworn to September 28, 1978.) The open lines of communication existing between non-adversarial parties provided Fahnestock with every opportunity, at the very least, to learn FNCB's position vis-a-vis the PCI transaction. Fahnestock is charged with such knowledge as reasonable inquiry would have afforded.

The evidence demonstrates that as of the January 4, 1973 Blanchard letter to the New York Stock Exchange, and the November 21, 1973 Grant Affidavit—both of which reflected a recognition that the principals behind the PCI trades were the manipulators (viz. Rodman and Zammas) and not FNCB—all of the information available to Fahnestock confirmed FNCB's agency status. The three parties with actual knowledge of any agency relationship had all gone on record in 1973 and early 1974, recognizing the transaction as having been conducted by FNCB in its capacity as agent for Rodman and Zammas, respectively. Certainly nothing asserted by FNCB, Rodman or Zammas could have provided Fahnestock with a predicate for asserting that FNCB was acting for its own account in the October PCI trades.

Although Fahnestock states that it relied upon both this court's decision in *SEC v. Equitable Equities, Inc.*, Unreported, 72 Civ. 4349 (S.D.N.Y. December 22, 1975), and a letter dated October 10, 1972 from FNCB's Leonard Flocco to JAB Securities Co., Inc. (submitted belatedly as Exhibit A to the Affidavit of E. Stephen Walsh dated April 15, 1980), to support its claim that Fahnestock's ultimate customer was FNCB, acting for its own account and not for that of Rodman or Zammas, these purported supports provide no basis for Fahnestock's erstwhile colorless claims.

Fahnestock's Objection to the Trustee's Determination, which objection was filed in September of 1975, and which is the predicate for the allegation of bad faith herein, predates the *Equitable Equities* decision by a number of months. Fahnestock could not have relied on, or been misled by, a decision not yet rendered by this court. Furthermore, the fact that in *Equitable Equities*, FNCB qualified as a "customer" is irrelevant to the issue of bad faith herein. Fahnestock did not just claim FNCB to be its customer on the PCI trades; rather, it claimed FNCB as its "ultimate customer acting for its own account and not for the account of those persons believed by the trustee to be the customer." It is this latter assertion that is the predicate for the finding of bad faith. Equitable Equities was not only decided too late to be a basis for Fahnestock's September 1975 Objection, but the decision is also irrelevant to the issue of bad faith now before this court.

Despite the fact that the October 10, 1972 Flocco letter is inadmissible as an exhibit to an affidavit which was untimely submitted, the letter adds no support to make Fahnestock's claim even colorable. The letter predated Blanchard's letter to the New York Stock Exchange by several months and, clearly, did not reflect or influence Fahnestock's understanding of the PCI transaction. Furthermore, all that the letter indicates is that, to the extent the trades were recorded by JAB in October 1972, they were recorded to FNCB's account. The letter does not reveal whether FNCB was acting as agent or principal and, in fact, Fahnestock did not know who the customer was when it transacted the trades. Fahnestock could not make an assumption one way or the other from the October 10, 1972 letter, and, in light of all subsequent evidence, no basis whatsoever existed for Fahnestock's later assertions.

There was no reasonable basis either in September 1975 or 1978, when Fahnestock filed its Objection to the Trustee's Determination and its motion for summary judgment on the open contractual commitment claim, respectively, for Fahnestock to

844

claim that "the ultimate customer of Fahnestock was First National City Bank which was acting for its own account and not for the account of those persons believed by the Trustee to be the ultimate customers."

There was no way that Fahnestock might have established any facts to support its claim since Fahnestock knew, or should have known, that no such facts existed. In actuality, Fahnestock's repeated assertions concerning the customer interest were entirely without color, interposed to shift the burden of its loss onto the public and, as such, the claims were made in bad faith.

The motion to reargue is denied.