In re TANNER'S TRANSFER & STORAGE OF VIRGINIA, INC., Debtor.

TANNER'S TRANSFER & STORAGE OF VIRGINIA, INC., Plaintiff,

v.

Walker FLORANCE, Executor of the Estate of Elam L. Tanner, Jr., deceased and Walker Florance, Attorney at Law and partner of Florance, Gordon & Brown and Florance, Gordon & Brown and John W. Keiter[1] and Carol Keiter[2], Defendants.

Bankruptcy No. 80–00465–R.
Adv. No. 82–0278–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

May 8, 1984.

1. Plaintiff settled with John W. Keiter before the trial held May 23 to 25, 1983.

2. This Court dismissed Carol Keiter as a defendant on January 18, 1982.

Watson M. Marshall, Marshall & Canfield, Richmond, Va., Trustee in Bankruptcy.

John F. Ames, Richmond, Va., for trustee.

William D. Bayliss, Paul S. Bliley, Jr., Browder, Russell, Morris & Butcher, Richmond, Va., for defendants.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This matter comes before the Court upon defendants' motion for attorneys' fees and costs generated in defense of the underlying complaint filed by the debtor to recover monies due. The complaint also alleged a breach of fiduciary duty by the defendant, Walker Florance, Esquire ("Florance"), which he owed in his capacity as executor and trustee of the Estate of Elam L. Tanner, Jr. The complaint named Florance both in his capacity as executor and trustee and as attorney and partner of the law firm of Florance, Gordon & Brown.[3]

Defendants move for an assessment of attorneys' fees and costs against plaintiff and/or counsel, John F. Ames, Esquire ("Ames"), for engaging in abusive and dilatory practices and "act[ing] in bad faith, vexatiously, wantonly or for oppressive reasons" in instituting and prosecuting this action. Although the Court does not wish to re-examine entirely the underlying complaint which was tried over a period of three days, a brief review of the Court's finding of facts relevant to this discussion is appropriate.

Elam L. Tanner, Jr., founded a moving and storage business, Tanner's Transfer and Storage, as a sole proprietorship in 1917. Upon Mr. Tanner's death in 1961, his Last Will and Testament ("Tanner's Will") established a desire and intent on behalf of the testator to continue Tanner's Transfer and Storage as a family business. Walker Florance qualified both as co-executor and trustee under Tanner's Will and oversaw the operation of the business as a sole proprietorship until October 1, 1976. At that time, Tanner's Transfer and Storage of Virginia, Incorporated ("Tanner's, Inc.") was incorporated and the assets and liabilities of the proprietorship were transferred to Tanner's, Inc. The stock of Tanner's, Inc. was distributed by the co-executors and trustee to the heirs of the Tanner estate on September 1, 1978.

Tanner's Will had an exculpatory clause and also gave the executor the right to run the business as a proprietorship or to incorporate the business. In the early 1970s, Florance hired John W. Keiter ("Keiter") as a salesman. Keiter eventually became general manager of the Richmond, Virginia branch of the business. The business was quite susceptible to the general economic climate, enjoying numerous profitable years and enduring several unprofitable periods. The business' bookkeeping was behind frequently, resulting in the failure to file timely accountings. During the period relevant to the complaint, the business' failure to pay federal withholding taxes became a serious problem. As a result, Keiter was indicted, convicted and sentenced in the United States District Court, pursuant to a plea agreement, for failure to deposit tax payments in a timely manner.

After failing to acquire an equity position in Tanner's Inc., Keiter resigned as general manager in September 1978. Subsequent to Keiter's resignation, the Tanner family took over the entire business. Within sixteen to eighteen months after the Tanner family assumed control, the company filed a petition under Chapter 11 of the Bankruptcy Reform Act of 1978 ("the Bankruptcy Code"). By this time, John F. Ames had become the counsel for the debtor corporation. After filing its petition in bankruptcy, the debtor instituted a suit against defendants for a recovery of monies which should have been paid as federal

---

**3.** The law firm of Florance, Gordon & Brown was named as a defendant because of its relationship with Walker Florance, a partner of the law firm. The law firm remained a party defendant, along with Walker Florance, throughout the entire proceedings.

income, payroll, unemployment, excise and other taxes and liabilities[4]. After conversion of the debtor's case to a case under Chapter 7 of the Bankruptcy Code, Ames was appointed to represent the Trustee in Bankruptcy in this case.

This court presided over the adversary proceeding in Richmond where the matter was tried. After hearing plaintiff's case and carefully reviewing all of the evidence, the Court granted defendants' motion for a directed verdict made pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Concurrent with defendants' motion for a directed verdict, Florance moved the Court to grant attorneys' fees and costs against plaintiff and/or counsel because of abusive and dilatory litigation practices, claiming the suit was brought in bad faith to satisfy an improper objective. Upon review of all the facts of the case and examination of the briefs submitted by both parties on this issue, the Court awards attorneys' fees and costs in the amount of $24,044.02, jointly and severally against plaintiff and plaintiff's counsel, John F. Ames.

■ Under the "American Rule", each party to a litigation is responsible for the payment of their own attorneys' fees absent statutory or contractual authorization allowing recovery from the opposing party. *Alyeska Pipeline Service Company v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Exceptions to the American Rule exist, however, in situations where certain "overriding considerations" require that a recovery of attorneys' fees be allowed. *Alyeska Pipeline Service Company, supra,* at 245–46, 95 S.Ct. at 1615–1616; *McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir.1983); *see Mills v. Electric Auto-Lite Company,* 396 U.S. 375, 391–92, 90 S.Ct. 616, 625–626, 24 L.Ed.2d 593 (1970). When justice demands, a court may rely upon its inherent, equitable powers to assess attorneys' fees.

*Hall v. Cole,* 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–1946, 36 L.Ed.2d 702 (1973). It has long been settled that in the interest of justice a court may award attorneys' fees against a party who "has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons'" *Id.,* and authorities cited therein.

■ An award of attorneys' fees against a party who has acted in bad faith is punitive in nature. The bad faith filing and pursuit of a claim wastes the resources of the judicial system and of the parties involved. Because of fee-shifting's punitive purpose, there must be a finding of bad faith on the part of the person or entity against whom fees are assessed. *Hall v. Cole, supra,* at 15; 93 S.Ct. at 1951; *Robinson v. Ritchie,* 646 F.2d 147, 148 (4th Cir.1981); *Bernstein by Bernstein v. Menard,* 557 F.Supp. 92, 94 n. 6 (E.D.Va. 1983).

■ Courts particularly must be careful in assessing attorneys' fees based on allegations of bad faith. *See, e.g., Adams v. Carlson,* 521 F.2d 168, 170 (7th Cir.1975). Although abuses of judicial process should be discouraged by the strongest method possible, a delicate balance must be maintained in shifting attorneys' fees so as not to deter the filing and pursuit of legitimate, yet potentially "risky", claims. *See, Browning Debenture Holders' Committee v. DASA Corporation,* 560 F.2d 1078, 1088 (2d Cir.1977).

■ Bad faith may be found in the filing of the lawsuit as well as in the conduct of the litigation. *Hall v. Cole, supra,* 412 U.S. at 15, 93 S.Ct. at 1951. Upon reviewing the facts and circumstances surrounding a claim as reflected in the record, a court must take extreme care not to allow the ultimate result of the litigation to influence its determination. In other

---

**4.** This Court dismissed plaintiff's original complaint on July 21, 1982 pursuant to defendants' motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted. The Court dismissed the complaint because of, *inter alia,* plaintiff's deficiency in alleging the existence and subsequent breach of fiduciary duty owed by defendants, indicating specifically how each defendant breached the duty. *In re Tanner's Transfer & Storage of Virginia, Incorporated,* 22 B.R. 24, 26 (Bkrtcy.E.D.Va.1982).

words, the fact that a party was unsuccessful in pursuing its claim does not constitute even "the merest scintilla of evidence" that the claim was without color. *See Wright v. Jackson,* 522 F.2d 955, 958 (4th Cir.1975) (even winners may have to pay obstinacy fees). For a finding of bad faith, there must be clear evidence that the claim was entirely without substance and was instituted only for vexatious, oppressive, or other improper purposes. *Browning Debenture Holders' Committee v. DASA Corporation,* 560 F.2d 1078, 1088 (2d Cir.1977); *Securities and Exchange Commission v. Havener Securities Corporation,* 7 B.R. 839, 841 (Bkrtcy.S.D.N.Y.1980). A claim is colorable as long as "a reasonable attorney could have concluded that facts supporting the claim might be established." *Nemeroff v. Abelson,* 704 F.2d 652, 658–59 (2d Cir. 1983), *citing Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980) (emphasis deleted).

 The fact that a colorable claim has been instituted, however, does not end the inquiry. Bad faith may also be found in the conduct of the litigation. *Hall v. Cole, supra,* 412 U.S. at 15, 93 S.Ct. at 1951; *Lipsig v. National Student Marketing Corporation,* 663 F.2d 178, 182 (D.C. Cir.1980) (per curiam). Appropriate factors to consider while investigating allegations of a bad faith pursuit of a claim are: dilatory tactics during discovery and hearings; the failure to meet court-imposed deadlines; the misuse of discovery; misleading a court by misquoting documentary evidence and unreasonably multiplying the proceedings. *See, e.g., McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir.1983); *Nemeroff v. Abelson,* 704 F.2d 652, 660 (2d Cir.1983); *Lipsig v. National Student Marketing Corporation,* 663 F.2d 178, 181–82 (D.C.Cir.1980) (per curiam); *W.H. Brady Company v. LEM Products, Incorporated,* 521 F.Supp. 676, 677–78 (N.D.Ill., E.D.1981); *Pfister v. Delta Air Lines, Incorporated,* 496 F.Supp. 932, 937, 939 (N.D.Ga.1980).

 Bad faith fee awards must be limited to compensate for those expenses reasonably incurred in order to counter the bad faith practices. *Wright v. Jackson,* 522 F.2d 955, 958 (4th Cir.1975); *Aero Corporation v. Department of the Navy,* 558 F.Supp. 404, 428–29 (D.D.C.1983). A problem in awarding fees arises when the action is initiated in bad faith. In such instances, a court must determine which of the actions taken by a party because of the filing of the complaint have been initiated to counter the bad faith filing. The United States Court of Appeals for the Second Circuit determined that the proper measure of a bad faith award in such an instance should be the costs reasonably required to secure the earliest dismissal possible. *Browning Debenture Holders' Committee v. DASA Corporation,* 560 F.2d 1078, 1088 (2d Cir.1977). Although such a view is consistent with the rationale for fee-shifting, promoting the efficient use of judicial resources, the *Browning* restriction is too limited. For example, a client's substantive rights must be protected while counsel is deliberating the propriety of making the procedural dismissal motion. Additionally, it is unclear whether the *Browning* restriction would allow recovery for attorney's fees expended to counter motions which independently may not have been in bad faith but nevertheless are pursuant to the bad faith filing.

 While the *Browning* decision is well reasoned, this Court must differ with the Second Circuit Court of Appeals on the limitation that it has placed on the recovery of attorneys' fees. In the absence of controlling precedent, this Court is of the opinion that attorneys' fees and costs reasonably incurred to defend a claim filed in bad faith are recoverable. Of course, attorneys' fees and costs generated by steps taken only to protract the litigation would not be incurred reasonably and, therefore, would not be recoverable.

Congress has supported the assessment of attorneys' fees against opposing counsel as a deterrent to bad faith or vexatious filings and litigation practices. For example, by amending section 1927 of Title 28 of the United States Code, Congress authorized courts to assess attorneys' fees personally against any attorney or other person

who vexatiously or unreasonably multiplies proceedings in any case. 28 U.S.C. § 1927 (West Supp.1982); *see In re Jolly Joint, Incorporated*, 23 B.R. 395, 403 (Bkrtcy.E. D.N.Y.1982). Newly amended Rule 11 of the Federal Rules of Civil Procedure is additional authority for a court to assess reasonable attorneys' fees against an attorney and/or a represented party for fees incurred as a result of a pleading made in bad faith. Similarly, Rule 8(L) of the Local Rules of Bankruptcy Procedure authorizes this Court to assess costs and attorneys' fees against counsel to deter the presentation of unnecessary discovery motions or objections.

█ Statutory authorization is not the exclusive means by which attorneys' fees may be assessed against an attorney. The Supreme Court of the United States has indicated that courts may require counsel to pay attorneys' fees under the inherent equitable powers possessed by a court. *Roadway Express, Incorporated v. Piper*, 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464–2465, 65 L.Ed.2d 488 (1980). In order for attorneys' fees to be assessed against counsel, however, a court must find that counsel acted in bad faith either in filing or in pursuing the claim. *Id.; Bernstein by Bernstein v. Menard*, 557 F.Supp. 92, 94 n. 6 (E.D.Va.1983).

█ Usually, an assessment of attorneys' fees is made jointly and severally against a party and his counsel, both of whom have acted in bad faith. Such an assessment is the result of the general understanding that a party is bound by the actions of his attorney. *Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1019 (5th Cir.1981) (per curiam); *Bernstein by Bernstein v. Menard*, 557 F.Supp. 92, 94–95 (E.D.Va.1983).

█ This case represents the expenditure of two-and-a-half years of time and energy on behalf of several parties, including two bankruptcy courts in this district. After allowing plaintiff a great deal of leeway and according it the benefit of the doubt on several occasions during this period, this Court finally presided over a three-day trial in this matter. The bulk of plaintiff's amended complaint asserted causes of action against Florance in his capacity as executor of the estate of Elam L. Tanner, Jr. The debtor corporation named as plaintiff, however, was never a beneficiary of the estate. Furthermore, no evidence was introduced by Ames on behalf of plaintiff showing any transfer of beneficiary rights from Tanner's heirs to the corporate plaintiff. As Ames' own expert, an individual with unquestionable qualifications, indicated in his deposition, Florance owed a fiduciary duty as executor only to the beneficiaries of the Tanner estate. There is no indication as to why beneficiaries of the estate were not named as plaintiffs.

Tellingly, the depositions of three beneficiaries of the estate, who were also officers and workers in the corporation, attest that those individuals had not spoken with Ames in several months about the case and had virtually no knowledge of the facts alleged. Upon a complete review of the record, including evidence adduced at trial and the depositions transcribed, this Court is unable to find any evidence which would support a reasonable expectation that the facts supporting plaintiff's claim might be established. This finding would support defendants' allegation that the claim was without color and made in bad faith and this Court so finds.

Further review of these proceedings indicates bad faith on Ames' part in pursuing the claim. Ames missed several deadlines that this Court imposed regarding discovery and other matters. Perhaps Ames' most egregious act was notifying defendants' counsel on May 12, 1983, eleven days before trial, of the identity of sixteen witnesses Ames intended to call at trial. Eight of these witnesses were not on the list of witnesses as required under the Pre-Trial Order. Additionally, Ames identified these witnesses four months after the date required by the Pre-Trial Order. Although discovery was to be completed by April 18, 1983, defendants wished to accommodate plaintiff, and this Court allowed defendants to conduct depositions.

Additionally, Ames advised Florence's attorneys shortly before trial that he would be calling "four or five experts" as witnesses. Not until May 1983 did Ames identify the one expert witness he actually called to testify. Of course, the result of this failure to abide by the Pre-Trial Order was to require defendants to schedule and conduct another deposition during the last days before trial. Defendants deposed the expert witness on May 12, 1983, eleven days prior to the commencement of the trial. In his deposition, the expert witness indicated that Ames contacted him about testifying nearly eight months earlier.

The record indicates, and this Court well remembers, the filing of unnecessary motions by Ames throughout these proceedings. During a hearing before this Court on December 10, 1982, Ames moved to compel discovery. Our review of the case file at that time produced a letter which evidenced an agreement between counsel that the answers to Ames' discovery requests need not be filed until this Court ruled on a prior motion to dismiss. During the same hearing, the Court denied Ames' motion to compel answers to interrogatories on the ground that Florance had either sufficiently answered each interrogatory or could not answer the interrogatories. Despite the Court's December 10, 1982 ruling, Ames filed a motion for a protective order on February 14, 1983 based on defendants' failure to answer these same interrogatories. This Court presided over a hearing on that motion on February 28, 1983.

A further example of Ames' bad faith in prosecuting this action was the complete lack of preparation of plaintiff's witnesses. Although Ames originally had listed Nancy Harrison as a witness in January 1983, she indicated in her deposition conducted May 17, 1983 that Ames had never discussed the case with her. A similar scenario was repeated on other occasions. An illustrative example of Ames' bad faith pursuit of this claim is contained in the deposition of Ames' expert witness, J. Rodney Johnson, Esquire. As of the date of his deposition, May 12, 1983, Ames' expert had met with Ames on only two occasions for a total of three hours. Johnson looked at no material prior to the first meeting on May 2, 1983. Furthermore, at the time of the deposition, Johnson had not even read the amended complaint.

Throughout the course of the three-day trial, long periods of time elapsed between the questions posed by Ames. Lay witnesses gave answers which Ames evidently did not anticipate and, in many instances, the witnesses did not understand Ames' questions. The lack of Ames' preparation was further attested to as he attempted to introduce exhibits through some of the witnesses. On at least ten occasions involving four different witnesses, the exhibits were not admitted because the particular witness could not identify the exhibit.

The most telling example of Ames' bad faith pursuit of the claim and the concomitant lack of preparation was demonstrated, again, in Ames' handling of the expert witness called by him. For nearly three hours, the expert was on the stand. During that time, Ames asked only one proper question. To the single question allowed by the Court, the expert witness responded by saying that he could see no breach of fiduciary duty by Florance. The large share of this time could have been saved if Ames had submitted his hypothetical questions to the Court before questioning the witness as he was required to do under Rule 6(D) of the Local Rules of Bankruptcy Procedure.

■ As indicated earlier, this Court finds that Ames' filing of this proceeding was in bad faith. As a result, the reasonable costs and fees incurred to defend against this claim are recoverable. Defendants have requested reimbursement of attorney fees, expert witness fees and expenses in the amount of $34,122.65. The amount of fees requested must be reviewed by this Court to determine their reasonableness according to the guidelines of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), as adopted by the United States Court of Appeals for

the Fourth Circuit. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978).

Although this Court feels that virtually all of the expenses incurred by defendant would be compensable, a change in the bookkeeping system of the attorneys for defendant resulted in the loss of a great deal of the supporting documentation. Thus, the full amount of costs requested may not be allowed because of the inability of the defendants to provide sufficient substantiation. The Court, however, has reviewed the records provided by defendant very carefully and finds that roughly two-thirds of the amount requested is properly compensable.

Although the amount of attorneys' fees and costs for which counsel for Florance apply are large, counsel have worked on this matter for a period in excess of two-and-a-half years. The majority of the efforts made in response to Ames' actions occurred between December 1982 and May 1983. During this period of time, counsel was required to respond to discovery motions filed by Ames and to depose witnesses belatedly identified by Ames. Additionally, counsel retained an expert witness in an attempt to counter the "four or five experts" that Ames claimed he was going to call as witnesses. The case potentially was very complicated, encompassing matters in corporate law, estate law, tax law, bankruptcy law, the trucking industry and accounting. The complexity of the case was reflected in the "novel" theories espoused by Ames and the $900,000.00 in damages plaintiff sought.

All the expenses sought by defendants have been properly documented and are allowed in full and assessed jointly and severally against plaintiff and its counsel. These expenses include the fees of the expert witness of $2,752.00. The expert was an attorney versed in the various matters relevant to the defense of the action. The expert has provided sufficient documentation of the 34.4 hours for which he charged $80.00 per hour and all the charges appear proper. As the Court indicated earlier, documentation supporting two of the three separate billings of defendant's attorneys are only partly provided. The third billing, however, has been completely documented with computer printouts. The billing of attorneys' fees in the third period was by far the largest, making up 64% of the total attorneys' fees requested over the two-and-a-half-year period. The hourly rates of the counsel involved over the entire period range from $60.00 to $85.00 and are reasonable for the Richmond area especially considering the complexity of the issues involved. After carefully reviewing the billings of attorneys' fees and the supporting documentation provided, this Court determines that attorneys' fees in the amount of $19,000.00 should be assessed jointly and severally against plaintiff and its counsel.

For the reasons set forth above, this Court assesses fees and expenses in the amount of $24,044.02 jointly and severally against Tanner's Transfer & Storage of Virginia, Inc., debtor herein, and against debtor's counsel, John F. Ames, Esquire. Accordingly, attorneys' fees in the amount of $19,000.00 and expenses in the amount of $5,044.02 will be awarded.

An appropriate Order will enter.