In re Bernard E. GECOWETTS, Debtor.

Joye GECOWETTS Plaintiff,

v.

Bernard E. GECOWETTS, Defendant.

Bankruptcy No. 88–1895.

Adv. No. 89–0018.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 8, 1991.

**688**

Theodore S. Miseveth, Lawyers On Your Side, P.C., Springfield, Va., for debtor.

John L. Lilly, Jr., Hyatt Legal Services, Springfield, Va., for plaintiff.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter comes before the Court upon the application of Theodore S. Miseveth to recover $600.00 in attorney's fees incurred in representing Bernard Gecowetts ("debtor" or "defendant") in an action filed by the debtor's estranged wife, Joye Gecowetts ("plaintiff"), objecting to the debtor's discharge. For the reasons stated below, we deny counsel's request for the fees in question.

On October 3, 1988 Bernard Gecowetts filed a petition under Chapter 7 of the United States Bankruptcy Code. Shortly thereafter on January 9, 1989, Joye Gecowetts filed an "Objection to Discharge and

Complaint to Determine Dischargeability." The complaint listed several grounds on which the debtor should be denied a discharge. First, the complaint stated that the debtor failed to schedule an interest in his residence, on which the debtor allegedly had a lease-option. The complaint further alleged that the debtor failed to schedule land in Colorado, referred to as "Lot 30," jointly owned by the plaintiff and the debtor.[1] Finally, it was alleged that the debtor listed a debt with Security Pacific Finance as a joint debt, which resulted from an unsecured loan made on January 6, 1986 in which the defendant received the proceeds. The plaintiff maintains that she was not in the United States when the defendant claims that she signed the note. Accordingly, the plaintiff argues, the debtor committed fraud in jointly obligating her on the loan.

At the July 12, 1989 trial on the complaint, the plaintiff conceded that the parties did not have an option to buy the residence that they were renting. The only remaining issues at trial, therefore, centered on whether the defendant deliberately failed to list one of two Colorado properties in which he has an interest and whether, on January 6, 1986, the plaintiff signed the note at issue in the complaint. *See* Defendant's Exhibit "A" ("Revolving Loan Agreement, Note, and Federal Disclosure Statement") [hereinafter "loan agreement"]. Before reviewing the relevant testimony adduced at trial, we first set forth the standard for determining whether a prevailing litigant is entitled to recover attorney's fees from the losing party.

Under the well-established "American Rule," "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612,

---

1. The complaint states that the defendant listed in his petition a parcel of land described as Tract 31, Park Ridge Ranch, Filing No. 2, located in Park County, Colorado. Objection to Discharge and Complaint to Determine Dischargeability, p. 1, ¶ 3. The complaint further states,

however, that "plaintiff and defendant purchased two lots also located in Park County" and that "[p]laintiff, on information and belief, believes that defendant has not sold such lots." *Id.*

1616–17, 44 L.Ed.2d 141 (1975).[2] One exception to the American Rule is a court's authority to award attorney's fees against a losing party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska,* 421 U.S. at 258–59, 95 S.Ct. at 1622. A court may find bad faith in the filing of the lawsuit as well as the conduct of the litigation. *In re Tanner's Transfer & Storage of Virginia, Inc.,* 39 B.R. 835, 838 (Bankr.E.D.Va.1984) (citing *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973).

As we previously explained in *In re Tanner's Transfer & Storage of Virginia, Inc.,* 39 B.R. 835 (Bankr.E.D.Va.1984) courts must be particularly careful in assessing attorney's fees based on allegations of bad faith. *Tanner,* 39 B.R. at 838. Significantly, we observed in *Tanner* that

a court must take extreme care not to allow the ultimate result of the litigation to influence its determination. In other words, the fact that a party was unsuccessful in pursuing its claim does not constitute even 'the merest scintilla of evidence' that the claim was without color. *See Wright v. Jackson,* 522 F.2d 955, 958 (4th Cir.1975). . . . *For a finding of bad faith, there must be clear evidence that the claim was entirely without*

*substance and was instituted only for vexatious, oppressive, or other improper purposes* (citations omitted). A claim is colorable as long as 'a reasonable attorney could have concluded that facts supporting the claim might be established.' (citations omitted).

*Tanner,* 39 B.R. at 838–39 (emphasis supplied).[3] As *Tanner* thus makes clear, a bad faith finding requires clear evidence that the claim was entirely without substance and was instituted only for vexatious, oppressive or other improper purposes. *Id.* It is with this standard in mind that we review the relevant testimony adduced at trial.

Mrs. Gecowetts, who was called as the first witness, testified that she has served in the active military for eleven years and has a top secret security clearance. She separated from her husband on July 23, 1988, she explained, as a result of child and spousal abuse. Mrs. Gecowetts stated that her husband "drinks a lot" and that his drinking results in short term memory loss. With respect to the loan agreement that contains the signature "Joye LaBarge Gecowetts[,]" Mrs. Gecowetts testified that she departed for Korea on January 4, 1986 and was in Camp Colbern, Korea on January 6, 1986, the day on which the loan agreement supposedly was executed.[4]

---

**2.** A major exception to the "American Rule" is congressional authorization for courts to require one party to award attorney's fees to the other. *Pennsylvania v. Delaware Valley Citizens' Council For Clean Air,* 478 U.S. 546, 561–62, 106 S.Ct. 3088, 3096–97, 92 L.Ed.2d 439 (1986). A second exception to the American Rule is a court's authority to enforce its own orders by assessing attorney's fees for the willful violation of a court order. *Delaware Valley,* 478 U.S. at 562 n. 6, 106 S.Ct. at 3096 n. 6 (citing *Alyeska,* 421 U.S. at 258, 95 S.Ct. at 1622). Another recognized exception to the American Rule is a court's power to award fees in commercial litigation to plaintiffs who recovered a "common fund" for themselves and others through securities or antitrust litigation. *Delaware Valley,* 478 U.S. at 562 n. 6, 106 S.Ct. at 3096 n. 6 (citing *Alyeska,* 421 U.S. at 257, 95 S.Ct. at 1621).

**3.** Rule 11 of the Federal Rules of Civil Procedure specifically authorizes a court to assess reasonable attorney's fees against an attorney and/or a represented party for fees incurred as a result of a pleading filed in bad faith. Fed.R. Civ.P. 11. The United States Supreme Court in *Cooter & Gell v. Hartmax Corp.,* — U.S. —,

110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990), recently has observed that

Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for any improper purpose.' An attorney who signs the paper without such a substantial belief 'shall' be penalized by 'an appropriate sanction.' Such a sanction may, but need not, include payment of the other parties' expenses.

**4.** To support her position that she departed for Korea on January 4, 1986, Mrs. Gecowetts submitted into evidence a document known as a "travelope," which she described as an envelope that the Pentagon issues for a passenger to carry his ticket, boarding pass and itinerary. She also stated that the travelope lists the passenger's boarding time. Mrs. Gecowetts maintains that she caught the plane as indicated in her travelope, which provides that she was to report to Northwest Airlines at Seattle Tacoma International Airport no later than 12:55 p.m. on January 4, 1986.

Mrs. Gecowetts insisted that she did not sign for the loan, and that she would have remembered if she in fact had signed for it. She acknowledged on cross-examination that the signature in question is similar to, but not the same as, her own signature.

Mr. Gecowetts, who was called as the next witness, testified that he trained in stealth and deception in the Army, was a ranger instructor for two years, and was with the Army Rangers in Vietnam for one and one half years. With respect to the issue of whether he deliberately failed to list the parcel of Colorado property referred to as "Lot 30," Mr. Gecowetts explained that he and the plaintiff bought Lot 30 jointly with a couple named the "Shadoans." Both the Gecowetts and the Shadoans had agreed to make one half of the payments on the property to a couple named the "Barrys." Mr. Gecowetts explained that he made payments on Lot 30 until 1986, when he stopped payment because of "overwhelming" bills. After stopping payment, the defendant received a letter from the Barrys indicating that the Shadoans had made the Gecowetts' share of the payments on the property. The defendant therefore had assumed that Lot 30 "was lost" and that the Shadoans "had

picked it up." Accordingly, the defendant explained, he told Mrs. Gecowetts that he had "lost" the Colorado property.

With respect to the issue of whether Mrs. Gecowetts signed the loan agreement in question, the defendant testified that Mrs. Gecowetts did not leave for Korea on January 4, 1986. He stated that both he and Mrs. Gecowetts went to the loan offices of Security Pacific to increase their line of credit. In direct conflict with Mrs. Gecowetts' testimony, the defendant stated that the signature in question on the loan agreement is that of Mrs. Gecowetts.

The only other witness who testified was Charles Connor, an assistant manager at Security Pacific Financial Services, Incorporated ("Security Pacific"), which made the loan at issue.[5] Connor, who began working for Security Pacific in July 1986, testified on Security Pacific's loan application procedures. Specifically, he explained that borrowers typically are required to sign the loan applications in the presence of a loan officer at the company's offices.[6] Connor further explained that when a borrower signs the note, the borrower is required to provide some sort of identification to the loan officer pursuant to company policy. The purpose of having a photo-

In addition to the travelope, the plaintiff submitted into evidence a document referred to as her "PCS (permanent change of station) order" for Korea. She testified that the PCS order listed her "Reporting date" as being "In accordance with port call[,]" which refers to the port call date of January 4, 1986 listed on the travelope. She next directed the Court's attention to the portion of the PCS order that listed her availability date as January 8, 1986, which she explained was the date that she had to be at her duty station.

In an attempt to discredit the plaintiff's testimony with respect to the travelope and the PCS order, Mr. Gecowetts stated that it is not uncommon for travel orders to be changed. He explained that the travelope in question is only a port call of January 4, 1986, and it does not mean that the plaintiff would travel on January 4, 1986. It indicates only that Mrs. Gecowetts should have been available to travel no later than 12:55 p.m. on January 4, 1986. Mr. Gecowetts noted by way of example that he once had a port call of November 1967 to go to Vietnam and he did not depart until December 28, 1967. With respect to the PCS order, Mr. Gecowetts testified that it was not unusual that

the plaintiff's arrival in Korea would have a different date than that listed on the PCS order. He explained that "[a]vailability means exactly that, she must make herself available on the 8th. If she is not available, then she can report on another date." Transcript of Hearing to Determine Dischargeability of Debt, July 12, 1989, p. 79. According to Mr. Gecowetts, neither the travelope nor the PCS order guarantees that a passenger will arrive as stated in those documents.

5. Connor explained that Security Pacific Financial Services, Incorporated, formerly was known as Security Pacific Financial Corporation. He further noted that "First Fenwick Mortgage" is the name that his company operates under for its revolving unsecured lines of credit and its mortgage loans.

6. Connor did acknowledge that, in very exceptional circumstances, if one of the borrowers cannot make it to the office, the company may allow the loan to be closed by letting the borrower take the application to the absent borrower for signature and bring it back with photo identification to verify the absent borrower's signature.

static copy of the borrower's identification, he noted, is simply to verify that the person who has signed the application is the person receiving the proceeds of the loan. Although Connor testified as to Security Pacific's typical loan application procedures, he indicated that he did not have personal knowledge of the Gecowetts' loan because he was not employed by the company when the loan was executed.

At the close of the testimony, this Court ordered that a handwriting expert examine the signature at issue on the loan agreement to verify whether it belonged to the plaintiff. The matter then was set for further hearing on October 27, 1989. At that time, plaintiff's counsel represented that the handwriting expert could not testify that the signature in question was not that of Mrs. Gecowetts. Further, plaintiff's counsel acknowledged that the expert would indicate that it was highly probable that the signature belonged to the plaintiff. Plaintiff's counsel stressed, however, that the plaintiff did not have any recollection of signing the note. Based upon the previous testimony and counsel's proffer of what the handwriting expert would testify, we found the debt to be dischargeable.

■ Examining the case at bar in light of the standards outlined above, we do not find "clear evidence" that Mrs. Gecowetts' complaint was "entirely without substance" or that it was instituted "only for vexatious, oppressive, or other improper purposes." First, with respect to the count alleging the omission of the Colorado property from the schedules, the defendant stated in his answer that he amended his schedules to reflect the property omitted. Although the answer also stated that the omission was not intentional, we find that the defendant's intent in omitting the property was a proper issue to be examined at trial. Accordingly, we deny attorney's fees with respect to this count.

■ Turning next to the count alleging that the debtor fraudulently obligated the plaintiff on the loan in question, we note that although the handwriting expert very likely would have testified that the signature on the note belonged to Mrs. Gecowetts, that testimony by itself would not have been "clear evidence" that Mrs. Gecowetts asserted this allegation merely to harass her husband. It could suggest simply that Mrs. Gecowetts may have signed the note and forgotten, if she in fact did sign the note. In short, counsel for the debtor has not put forth any evidence, nor do we find clear evidence, that Mrs. Gecowetts filed her complaint "only for vexatious, oppressive, or other improper purposes."

Moreover, we cannot in hindsight rely on the potential testimony of the handwriting expert as evidence that the plaintiff's fraud claim was entirely without substance. As the plaintiff's counsel represented to the Court at the October 27, 1989 hearing, the plaintiff denies having any recollection of signing the note. The plaintiff's testimony, combined with her military "travelope", which states that she had a port call of January 4, 1986, provided a sufficient factual basis to make the plaintiff's fraud claim a colorable one.

Finally, this Court can find no bad faith in the conduct of the litigation. Accordingly, for the reasons stated above, we deny the application of Theodore S. Miseveth for attorney's fees in the amount of $600.00.

An appropriate order will be entered.